PEOPLE v BUSH

PEOPLE v HARDING

Docket Nos. 108830, 109727. Submitted October 4, 1990, at Lansing.
    Decided February 4, 1991, at 9:15 A.M. Leave to appeal sought.

Christopher C. Bush and Reginald H. Harding, Jr., were found
    guilty in separate trials in 1983 of armed robbery, assault with
    intent to murder, and possession of a firearm during the
    commission of a felony arising out of the same incident. In
    June of 1987, the original victim became convulsive and died
    following an unrelated fight. An autopsy disclosed that his
    death was a consequence of permanent heart damage caused by
    a gunshot wound during the 1983 incident. Both subsequently
    were charged with felony murder and felony-firearm. Following
    trial by a jury in the Oakland Circuit Court, both defendants
    were convicted of felony murder, and Bush also was convicted
    of felony-firearm. The court, Richard D. Kuhn, J., sentenced
    each defendant to life imprisonment for the felony murder
    conviction and sentenced Bush to the mandatory two-year
    prison term for the felony-firearm conviction. Both defendants
    appealed. The appeals were consolidated.

The Court of Appeals *held*:

The constitutional protection against double jeopardy does
    not bar a subsequent prosecution arising out of the same
    transaction where, at the time of the prior prosecution, the
    subsequent crime had not been completed or had not been
    discovered despite due diligence, but convictions of lesser in-
    cluded offenses subsumed by the subsequently charged offense
    must be set aside upon conviction of the subsequent offense,
    and the defendant given credit for time served.

1. Because the victim's death did not occur until after the
    first prosecution, double jeopardy protection did not bar prose-
    cution of the defendants for felony murder. Double jeopardy
    protection, however, requires setting aside the prior convictions

REFERENCES

Am Jur 2d, Criminal Law §§ 269, 273, 277; Expert and Opinion
    Evidence § 16.
Earlier prosecution for offense during which homicide was commit-
    ted as bar to prosecution for homicide. 11 ALR3d 834.

of armed robbery and assault with intent to commit murder. The armed robbery convictions also must be set aside because double jeopardy precludes a person from being convicted both of felony murder and of the underlying felony. The assault convictions likewise must be set aside as barred by double jeopardy, because assault with intent to commit murder is a lesser-included offense of felony murder. Further, the defendants are entitled to credit for the time served as a result of the prior convictions and sentences.

2. Bush's conviction of felony-firearm must be vacated in light of his prior felony-firearm conviction which related to his prior convictions of robbery and assault, which were subsumed in his conviction of felony murder.

3. Harding failed to properly preserve for appellate review the question whether his conviction of felony murder was against the great weight of the evidence. If viewed as a challenge to the sufficiency rather than the weight of the evidence, the claim lacks merit. There was expert medical testimony which, if believed, established that the victim died as a consequence of the 1983 gunshot wound.

4. The trial court did not err in permitting the prosecution to endorse and call the medical expert appointed by the court at the defendants' request. The record fails to support the claim that the witness was part of the defense team or was consulted about defense strategy; rather, the record discloses that the witness was an independent expert which either side could call.

Affirmed in part and reversed in part.

1. CRIMINAL LAW — CONSTITUTIONAL LAW — SUBSEQUENT PROSECU-
   TIONS — DOUBLE JEOPARDY.

The constitutional protection against double jeopardy does not bar a subsequent prosecution arising out of the same transaction where, at the time of the prior prosecution, the subsequent crime had not been completed or had not been discovered despite due diligence, but convictions of lesser included offenses subsumed by the subsequently charged offense must be set aside upon conviction of the subsequent, and the defendant given credit for time served.

2. CRIMINAL LAW — CONSTITUTIONAL LAW — FELONY FIREARM —
   DOUBLE JEOPARDY.

A person accused of committing separate felonies during a single transaction may be charged with and convicted of more than one count of possession of a firearm during the commission of a felony without violating double jeopardy principles, but where the felonies charged blend together into a single wrongful act,

there can be only one count of felony-firearm that may attach to it.

3. CRIMINAL LAW — WITNESSES — EXPERT WITNESSES.

An expert witness, appointed by the court upon a motion of a defendant in a criminal case, was properly endorsed and called as a witness for the prosecution where there was no showing that the witness was involved in the formulation of defense strategy (MRE 706[a]).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*McCarthy & Ristich, P.C.* (by *Michael J. McCarthy*), for defendant Bush.

*Lawrence G. Kaluzny,* for defendant Harding.

Before: WAHLS, P.J., and DOCTOROFF and G. S. ALLEN,* JJ.

G. S. ALLEN, J. In these consolidated cases involving several questions of first impression, we are asked to determine, inter alia, whether a prosecution for felony murder and possession of a weapon during the commission of a felony, where the victim died in excess of four years after a robbery and shooting, violates the constitutional guarantee against double jeopardy where defendants had been convicted of armed robbery, assault with intent to murder, and felony-firearm for their parts in the robbery and shooting. We affirm in part and reverse in part.

The testimony of the deceased victim, Jeffrey Dudley, given at the first trial and read into

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

evidence in the instant case, established the following. At 11:30 P.M. on May 5, 1983, Jeffrey, then a nineteen-year-old college student, left his place of work at Alfred's Restaurant, at Somerset Mall in Troy. As he approached his car in the mall parking lot, three black males drove up and stopped their car in front of Jeffrey's car. Defendant Bush then got out of the vehicle and aimed a gun at Jeffrey, ordering him to get into the passenger's seat in his own car. When Jeffrey complied, Bush demanded money and jewelry. Jeffrey could produce only a dollar. Bush became upset and motioned for defendant Harding and the third black male to come over to Jeffrey's car.

After Harding and the third male approached the car, Bush handed the gun to the third male, who momentarily placed it on the car seat. At that point Jeffrey grabbed the gun and discharged it at Bush, hitting Bush in the leg. Harding immediately grabbed Jeffrey and, after hitting him in the mouth and knocking loose several teeth, threw Jeffrey into the back seat.

Harding then got into the driver's seat and the third person got into the back seat with Jeffrey. Bush climbed into the passenger seat. Harding drove the car out of Somerset Mall, heading for Detroit. As they drove, a discussion ensued about killing Jeffrey. At the entrance ramp to I-75 at Big Beaver Road, Bush turned and fired two shots into Jeffrey, one striking him in the chest and the other in the abdomen. Harding drove south on I-75 toward Detroit.

After some discussion about dumping Jeffrey into a sewer, Harding left the freeway, located a sewer, stopped the car, removed the sewer cover, and, with the help of the third male, dumped Jeffrey head first into the sewer. Jeffrey managed to climb up the iron ladder, push off the sewer

cover, and crawl to a nearby house. The police arrived, finding Jeffrey lying on the porch and smelling of "sewer stench." He was taken to the hospital, where he twice underwent surgery.

Shortly thereafter, defendants Bush and Harding were arrested and charged with armed robbery, assault with intent to murder, and possession of a firearm during the commission of a felony. Tried by jury in the Oakland Circuit Court in September 1983 and found guilty as charged, Bush was sentenced to one hundred to three hundred years for the assault conviction, to life imprisonment for the armed robbery conviction, and to two years for the felony-firearm conviction. In a bench trial, in December 1983, Harding was found guilty of assault with intent to murder, armed robbery, and felony-firearm. He was sentenced to twenty to sixty years for the assault conviction, to seven to twenty years for the armed robbery conviction, and to the mandatory two years for the felony-firearm conviction. The convictions of both defendants were affirmed by this Court in separate, unpublished opinions in March 1985 and November 1986.

Meanwhile, Jeffrey went on with his life. He married, had a child, and became steadily employed. On June 28, 1987, during a backyard family picnic at Jeffrey's home in Detroit, Jeffrey, his brother, David, and his two brothers-in-law, Jason and Monte Gracey, played basketball. At some point in the game David Dudley and Monte Gracey began to argue. The argument escalated into a physical confrontation, and Jeffrey joined in the fray by striking Monte Gracey. The fight stopped when Jeffrey began having convulsions. Attempts to assist him were unsuccessful, and Jeffrey died shortly thereafter.

An autopsy disclosed the cause of death to be a

consequence of the permanent damage to Jeffrey's heart caused by the 1983 gunshot wound. Defendants were then charged with felony murder.

At defendants' trials on the charge of felony murder, Dr. Kaplan, the surgeon on call who had attended Jeffrey on the night he was shot, testified that Jeffrey was close to death, that the heart was lacerated, that there was bleeding in the heart sac and chest cavity, and that an immediate operation was necessary.

Also introduced at defendants' trials was the testimony of two medical examiners, Drs. Kanluen and Petinga. Both testified that, on the basis of the autopsy and the medical records from the May 1983 shooting, the gunshot wound to the heart was the cause of death and that the victim's acute heart attack was a consequence of the permanent damage to the heart and a scar in the heart which was due to the 1983 gunshot wound. A defense expert witness, Dr. Ezra Shaya, testified that Jeffrey died because of damage to the brain caused by blows to the head during the 1987 fight.

On appeal both defendants argue that trial on the charge of felony murder violated the constitutional guarantee to be free from double jeopardy. Additionally, defendant Bush argues that the trial court erred in sentencing him to a two-year mandatory term for the felony-firearm conviction because he had already been sentenced for a prior conviction of felony-firearm arising out of the same criminal transaction. Defendant Harding additionally argues that his conviction of felony murder was against the great weight of the evidence and that the trial court erred in allowing the prosecutor to endorse and call as a witness a doctor who was appointed to help the defense prepare for trial. For purposes of our opinion, the several

issues raised have been reformulated into four issues.

### I. WHERE DEFENDANTS HAVE BEEN PREVIOUSLY CONVICTED OF ASSAULT WITH INTENT TO MURDER, DOES A SUBSEQUENT CONVICTION OF FELONY MURDER, AFTER THE VICTIM DIES, VIOLATE THE CONSTITUTIONAL GUARANTEE AGAINST DOUBLE JEOPARDY?

Defendants first argue that their felony murder convictions must be reversed because the charges arose out of the same transaction as that which led to earlier convictions of assault with intent to murder and armed robbery.

Both the federal and state constitutions prohibit placing a person twice in jeopardy for the same offense. US Const, Am V; Const 1963, art 1, § 15. The Michigan Double Jeopardy Clause is substantially identical to the Double Jeopardy Clause of the Fifth Amendment. *People v White,* 390 Mich 245, 252, n 4; 212 NW2d 222 (1973).

In *Brown v Ohio,* 432 US 161; 97 S Ct 2221; 53 L Ed 2d 187 (1977), the Supreme Court established the general rule that the Double Jeopardy Clause prohibits a state or the federal government from trying a defendant *for a greater offense after it has convicted him of a lesser offense.* The Court reached this conclusion after applying the test set forth in *Blockburger v United States,* 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932):

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

The *Brown* Court then noted, however, that "[a]n exception may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered by the exercise of due diligence." 432 US 169, n 7.

One of the cases on which *Brown* relied for this exception to the general rule of double jeopardy is *Diaz v United States,* 223 US 442; 32 S Ct 250; 56 L Ed 500 (1912). In *Diaz,* the Supreme Court held that a charge of homicide made after the death of the person assaulted is not the same as a charge of an assault before the death of that person. The Court stated:

> The homicide charged against the accused in the court of first instance and the assault and battery for which he was tried before the justice of the peace, although identical in some of their elements, were distinct offenses both in law and in fact. The death of the injured person was the principal element of the homicide, but was no part of the assault and battery. At the time of the trial for the latter the death had not ensued, and not until it did ensue was the homicide committed. Then, and not before, was it possible to put the accused in jeopardy for that offense. [223 US at 448-449.]

See also *Ashe v Swenson,* 397 US 436, 453; 90 S Ct 1189; 25 L Ed 2d 469 (1970) (Brennan, J., concurring).

Michigan case law follows the exception to the general rule laid down in *Brown.* In *White,* 390 Mich 258, n 6, our Supreme Court recognized the need for an exception to the same transaction test:

> In adopting the same transaction test, we limit our holding to the facts of the present case and to similar factual situations.

We are aware that in certain situations, strict application of the same transaction test could lead to the anomalous result of foreclosing prosecution for an offense where the state had made a diligent and good faith effort to protect the defendant's constitutional rights.

"For example, where a crime is not completed or not discovered, despite diligence on the part of the police, until after the commencement of a prosecution for other crimes arising from the same transaction, an exception to the 'same transaction' rule should be made to permit a separate prosecution." *Ashe v Swenson,* 397 US 436, 453, n 7; 90 S Ct 1189, 1199; 25 L Ed 2d 469, 481 (1970) (Brennan, J., concurring). We emphasize that our primary objective in adopting the same transaction test is to insure that a criminal defendant receives meaningful protection under the double jeopardy clause. If actual situations should arise in which application of the same transaction test would not serve that objective, we will, in such a case, consider the adoption of limited exceptions to the same transaction test.

In *People v Williams,* 61 Mich App 642, 643; 233 NW2d 122 (1975), the defendant was charged with assault with intent to commit murder, armed robbery, and breaking and entering an occupied dwelling, and, later, as a result of a plea bargain, pled guilty of the latter charge. After the victim died, the defendant was charged with felony murder. *Id.,* 644. He later pled guilty of second-degree murder. *Id.* Citing *White,* this Court held:

We hold, therefore, that since the crime with which defendant was here charged was not complete at the time of his earlier plea, his conviction is not barred by double jeopardy. [*Id.,* 646.]

Similarly, in *People v Sharp,* 9 Mich App 34, 36; 155 NW2d 719 (1967), the defendant was involved

in an altercation on June 1, 1951, and was charged with felonious assault with a deadly weapon. The defendant pled guilty of the misdemeanor offense of aggravated assault. Subsequently, the victim died as a result of the defendant's June 1 attack. On October 19, 1951, the defendant was charged with first-degree murder. *Id.,* 36-37. Relying on *Diaz,* our Court held that former jeopardy was not a bar to the subsequent murder prosecution. *Id.,* 39.

An application of this law to the situation in the instant case clearly indicates that defendants were not twice placed in jeopardy by the subsequent prosecution for felony murder following the death of Jeffrey.

However, defendants further contend that even if double jeopardy does not prevent their prosecution for the felony murder charges, then double jeopardy is a defense which precludes their conviction. Otherwise, argue defendants, they are being twice punished for the same criminal offense. Therefore, at the very least, the prior convictions of armed robbery and assault with intent to murder should be set aside. On this issue, we agree in part with defendants.

In *People v Wilder,* 411 Mich 328, 352; 308 NW2d 112 (1981), our Supreme Court held that a person could not be *convicted* both of felony murder and of the underlying necessarily included felony of armed robbery without violating the state constitutional right against twice being placed in jeopardy. Subsequently, in *People v Robideau,* 419 Mich 458, 489, n 8; 355 NW2d 592 (1984), our Supreme Court observed that one could not be *sentenced* both for felony murder and for the underlying felony of armed robbery. The Court reasoned that because felony murder is punishable by a mandatory life sentence, while the predicate

felony is punishable by no more than a term of years up to life, it could be inferred that the Legislature intended to punish a defendant only once for committing both crimes. *Id.* This reasoning was followed by our Court in *People v Lumsden,* 168 Mich App 286, 300; 423 NW2d 645 (1988), in which the defendant was sentenced to life imprisonment for a felony murder conviction and from sixty to ninety years in prison for an armed robbery conviction. *Id.,* 288. Our Court vacated the conviction and sentence for armed robbery and affirmed the felony murder conviction and sentence, stating that it chose to follow *Robideau. Id.,* 300-301.

As in *Robideau* and *Lumsden,* we conclude that, while double jeopardy does not preclude defendants' convictions of felony murder, their prior convictions of armed robbery must be vacated.

However, no case law addresses the question whether defendants' prior convictions of assault with intent to murder must be vacated upon a subsequent conviction of murder or felony murder, after the victim has died. The issue raised is of first impression.

The constitutional protection against double jeopardy prevents a defendant from being convicted of two offenses where one is a necessarily or cognate lesser included offense of the other. *Wilder,* 411 Mich 343-344; *People v Kincaid,* 136 Mich App 209, 216; 356 NW2d 4 (1984). Our Supreme Court defined a necessarily included lesser offense and a cognate lesser included offense as follows:

> The common-law definition of lesser included offense is that the lesser must be such that it is impossible to commit the greater without first having committed the lesser. 4 Wharton, Criminal Law and Procedure, § 1799. This definition in-

cludes only *necessarily* included lesser offenses. This definition, however, is generally conceded to be unduly restrictive, and thus most jurisdictions, including Michigan, have statutes that are broadly construed to permit conviction of "cognate" or allied offenses of the same nature, under a sufficient charge. These lesser offenses are related and hence "cognate" in the sense that they share several elements, and are of the same class or category, but may contain some elements not found in the higher offense. [*People v Ora Jones,* 395 Mich 379, 387; 236 NW2d 461 (1975).]

The elements of the criminal offense of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *People v Guy Taylor,* 422 Mich 554, 567; 375 NW2d 1 (1985); *People v Beard,* 171 Mich App 538, 541; 431 NW2d 232 (1988).

The elements of felony murder are (1) the killing of a human being (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316; MSA 28.548. CJI2d 16.4.

On the basis of our review of the law, we conclude that assault with intent to commit murder is a lesser included offense of felony murder. Accordingly, the 1988 convictions of felony murder subsume and take the place of defendants' 1983 convictions of assault with intent to commit murder. Clearly, unless the earlier convictions of and sentences for the lesser included offense of assault with intent to murder are set aside, defendants will receive multiple punishment for one criminal

act. To sentence defendants for both assault to commit murder and felony murder appears to us to violate the constitutional prohibition against double jeopardy. Therefore, defendants' convictions of assault with intent to commit murder shall be set aside. Additionally, defendants shall be credited for the time of their confinement as a result of the assault conviction against the period of confinement imposed by reason of the convictions of felony murder. See *In re Saul S,* 167 Cal App 3d 1061; 213 Cal Rptr 541 (1985).

## II. DID THE TRIAL COURT ERR IN SENTENCING DEFENDANT BUSH TO A MANDATORY TWO-YEAR SENTENCE FOR THE FELONY-FIREARM CONVICTION WHERE DEFENDANT HAD ALREADY SERVED A TWO-YEAR FELONY-FIREARM SENTENCE FOR A PRIOR CONVICTION ARISING OUT OF THE SAME TRANSACTION?

It is Bush's position that he should serve only one sentence for his felony-firearm conviction. We agree. In *People v Morton,* 423 Mich 650, 655-656; 377 NW2d 798 (1985), our Supreme Court held that where separate felonies are committed during a single transaction, the accused may be charged and convicted of more than one count of possession of a firearm without violating double jeopardy principles. In other words, the felony-firearm count can be attached to each felony committed during a single criminal transaction. However, in the instant case, by operation of law, as detailed in the first section of this opinion, the two lesser included felonies—armed robbery and assault with intent to murder—have blended together into a single wrongful act—felony murder—for which defendant Bush may not be multiply punished. *People v Sturgis,* 130 Mich App 54, 62; 343 NW2d 230

(1983), aff'd 427 Mich 392; 397 NW2d 783 (1986). Accordingly, there being only one wrongful act, there can be only one count of felony-firearm that may attach to it. Defendant Bush's 1988 conviction of and sentence for felony-firearm must be vacated as violative of the prohibition against double jeopardy, in light of his 1983 conviction of and sentence for felony-firearm arising out of the instant criminal transaction.

### III. WAS DEFENDANT HARDING'S CONVICTION OF FELONY MURDER AGAINST THE GREAT WEIGHT OF THE EVIDENCE?

Harding argues that the cause of death was not sufficiently established and, ergo, the jury's verdict was against the great weight of the evidence. A claim that a verdict is against the great weight of the evidence can *only* be raised by a motion for a new trial. MCR 2.611(A)(1)(e); *People v Bradshaw,* 165 Mich App 562, 565; 419 NW2d 33 (1988). Failure to raise the issue by an appropriate motion waives the issue on appeal. *People v Johnson,* 168 Mich App 581, 585; 425 NW2d 187 (1988). In the instant case, Harding failed to move for a new trial. Therefore, appellate review is precluded.

Even if Harding's claim is viewed as a challenge to the sufficiency of the evidence rather than to its weight, the claim lacks merit. While prosecution and defense experts differed regarding the cause of death, each expert's opinion was based on supporting medical data. Drs. Kanluen and Petinga, both of whom were forensic pathologists, testified that Jeffrey died of an acute heart attack as a consequence of permanent damage to the heart caused by the 1983 gunshot wound. Dr. Shaya, a family practitioner, testifying for defendants, opined that death was caused by damage to the brain as a

result of blows to the head suffered during the 1987 scuffle.

Thus, the question of the cause of death became a question of credibility to be decided by the trier of fact. If the trier of fact chose to believe the prosecution's witnesses, there was sufficient evidence establishing death under the standard set forth in *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), cert den sub nom *Michigan v Hampton,* 449 US 885 (1980). The jury found in the prosecution's favor. We find that the trial court did not err in denying Harding's motion for a directed verdict because the prosecution did prove the proximate cause of the death beyond a reasonable doubt.

### IV. DID THE TRIAL COURT ERR IN ALLOWING THE PROSECUTOR TO ENDORSE AND CALL AN EXPERT WITNESS APPOINTED BY THE COURT?

Following the close of the prosecution's proof at the preliminary examination, both appointed defense counsels joined in a motion for the appointment of an "expert in behalf of the defense" to assist the defense on the issue of causation of death. The district court ruled:

[T]he question is not so much whether or not an independent physician or expert ought to be designated to give an opinion, but rather whether this Court should do that or the Circuit Court.

And what I've indicated is that this Court will communicate with Judge Kuhn, who has the case in Circuit Court, to determine whether or not the Circuit Court will designate the expert witness or this Court.

The district court then adjourned the examination for a month to permit the expert to examine the

evidence and formulate an opinion and to permit the defense time to obtain witnesses they wished to call.

When the preliminary examination continued, Dr. Petinga, the expert appointed by the court, was called by the defense and testified that on the basis of his review of the medical records Jeffrey's death was due to the gunshot wound to the heart suffered over four years previously and not because of any intervening heart problem aggravated by his life style, as the defense contended.

In the circuit court, Dr. Petinga was endorsed as a witness for the prosecution. Prior to his testimony, the defense objected, arguing that Dr. Petinga could not appear as a witness for the prosecution because he had been appointed as a defense expert witness. Following arguments, the trial court reserved its ruling until a separate record was made of Dr. Petinga's testimony. After hearing Dr. Petinga's testimony, the trial court ruled that the doctor was a court-appointed independent expert whom the prosecutor could call as a witness under MRE 706. On appeal, Harding argues that the trial court erred in endorsing Dr. Petinga as a prosecution witness because the doctor was appointed "to help the defense" and "to be a member of the defense team" and had consulted with the defense "about strategy."

A review of the lower court record does not support Harding's argument. To the contrary, the record discloses that Dr. Petinga was appointed as an independent expert witness to offer testimony regarding the cause of death. The record is devoid of evidence disclosing that he was to be a part of the "defense team." Moreover, the evidence established that he did not become involved in consultations concerning defense strategy. Further, Dr. Petinga specifically stated that he formed his opin-

ion of the cause of death without consulting with the defense or prosecution, and that he reached his opinion before appearing in court.

MRE 706(a) expressly provides:

> The court may . . . on the motion of any party . . . appoint any expert witnesses . . . [and a] witness so appointed . . . may be called to testify by . . . any party.

Given the facts of this case, we find no abuse of discretion in the trial court's ruling that Dr. Petinga might testify for the prosecution.

### V. SUMMATION

In summary we hold: (1) the prosecution and conviction of defendants on the felony murder charges after the victim died is not precluded by double jeopardy; (2) Bush's 1988 conviction of and sentence for felony-firearm is precluded by double jeopardy; (3) Harding's conviction of felony murder was not against the great weight or supported by insufficient evidence; (4) the trial court did not abuse its discretion by allowing the prosecution to endorse and call a court-appointed medical witness; (5) both defendants' prior convictions of and sentences for armed robbery and assault with intent to commit murder are vacated and set aside; (6) the time served by defendants as a result of their 1983 convictions of armed robbery and assault with intent to commit murder is to be credited to the sentences imposed upon them in 1988 for their felony murder convictions; and (7) defendants' convictions of first-degree felony murder are affirmed.

Affirmed in part and reversed in part.