**Reginald HARDING, Petitioner–Appellant,**

v.

**Barbara BOCK, Respondent–Appellee.**

No. 03–1566.

United States Court of Appeals, Sixth Circuit.

Aug. 5, 2004.

Penny R. Beardslee, James R. Gerometta, Federal Public Defenders Office, Detroit, MI, for Petitioner–Appellant.

William C. Campbell, Office of the Attorney General, Lansing, MI, for Respondent–Appellee.

Before DAUGHTREY and CLAY, Circuit Judges; and MCCALLA, District Judge.[*]

MCCALLA, District Judge.

Petitioner–Appellant Reginald Harding ("Harding") appeals from an order dismissing his petition for a writ of habeas corpus. Having been sentenced to life in prison without the possibility of parole, Harding asserts (1) that the evidence adduced at his trial was insufficient to support a conviction for felony-murder, (2) that his trial for felony-murder constituted double jeopardy, and (3) that his trial attorney failed to provide him with effective assistance. For the reasons set forth below, we affirm the district court's decision to deny the petition for a writ of habeas corpus.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts necessary to resolve the issues presented in this appeal were adequately summarized by the Michigan Court of Appeals in its decision in *People v. Bush,* 187 Mich.App. 316, 466 N.W.2d 736, 737–738 (1991). In its opinion, the court stated:

At 11:30 p.m. on May 5, 1983, Jeffrey [Dudley], then a nineteen-year-old col-

---

[*] The Hon. Jon P. McCalla, United States District Judge for the Western District of Tennessee, sitting by designation.

lege student, left his place of work at Alfred's Restaurant, at Somerset Mall in Troy. As he approached his car in the mall parking lot, three black males drove up and stopped their car in front of Jeffrey's car. Defendant [Christopher] Bush then got out of the vehicle and aimed a gun at Jeffrey, ordering him to get into the passenger's seat in his own car. When Jeffrey complied, Bush demanded money and jewelry. Jeffrey could produce only a dollar. Bush became upset and motioned for defendant Harding and the third black male to come over to Jeffrey's car.

After Harding and the third male approached the car, Bush handed the gun to the third male, who momentarily placed it on the car seat. At that point Jeffrey grabbed the gun and discharged it at Bush, hitting Bush in the leg. Harding immediately grabbed Jeffrey and, after hitting him in the mouth and knocking loose several teeth, threw Jeffrey into the back seat.

Harding then got into the driver's seat and the third person got into the back seat with Jeffrey. Bush climbed into the passenger seat. Harding drove the car out of Somerset Mall, heading for Detroit. As they drove, a discussion ensued about killing Jeffrey. At the entrance ramp to I–75 at Big Beaver Road, Bush turned and fired two shots into Jeffrey, one striking him in the chest and the other in the abdomen. Harding drove south on I–75 toward Detroit.

After some discussion about dumping Jeffrey into a sewer, Harding left the freeway, located a sewer, stopped the car, removed the sewer cover, and, with the help of the third male, dumped Jeffrey head first into the sewer. Jeffrey managed to climb up the iron ladder, push off the sewer cover, and crawl to a nearby house. The police arrived, finding Jeffrey lying on the porch and smelling of "sewer stench." He was taken to the hospital, where he twice underwent surgery.

Shortly thereafter, defendants Bush and Harding were arrested and charged with armed robbery, assault with intent to murder, and possession of a firearm during the commission of a felony.... In a bench trial, in December 1983, Harding was found guilty of assault with intent to murder, armed robbery, and felony-firearm. He was sentenced to twenty to sixty years for the assault conviction, to seven to twenty years for the armed robbery conviction, and to the mandatory two years for the felony firearm conviction. The convictions of both defendants were affirmed by this Court in separate, unpublished opinions in March 1985 and November 1986.

Meanwhile, Jeffrey went on with his life. He married, had a child, and became steadily employed. On June 28, 1987, during a backyard family picnic at Jeffrey's home in Detroit, Jeffrey, his brother, David, and his two brothers-in-law, Jason and Monte Gracey, played basketball. At some point in the game David Dudley and Monte Gracey began to argue. The argument escalated into a physical confrontation, and Jeffrey joined in the fray by striking Monte Gracey. The fight stopped when Jeffrey began having convulsions. Attempts to assist him were unsuccessful, and Jeffrey died shortly thereafter.

An autopsy disclosed the cause of death to be a consequence of the permanent damage to Jeffrey's heart caused by the 1983 gunshot wound. Defendants were then charged with felony-murder.

At defendants' trials on the charge of felony-murder, Dr. Kaplan, the surgeon

on call who had attended Jeffrey on the night he was shot, testified that Jeffrey was close to death, that the heart was lacerated, that there was bleeding in the heart sac and chest cavity, and that an immediate operation was necessary.

Also introduced at defendants' trials was the testimony of two medical examiners, Drs. Kanluen and Petinga. Both testified that, on the basis of the autopsy and the medical records from the May 1983 shooting, the gunshot wound to the heart was the cause of death and that the victim's acute heart attack was a consequence of the permanent damage to the heart and a scar in the heart which was due to the 1983 gunshot wound. A defense expert witness, Dr. Ezra Shaya, testified that Jeffrey died because of damage to the brain caused by blows to the head during the 1987 fight.

The jury chose to credit the testimony offered by the prosecution's experts and returned a verdict of guilty on the felony-murder charge against Harding. The petitioner unsuccessfully appealed his conviction both to the Michigan Court of Appeals and to the Michigan Supreme Court. The petitioner's collateral attempts in the state courts to attack his convictions, through allegations of ineffective assistance of counsel, were equally unavailing. Finally, Harding filed a petition for issuance of a writ of habeas corpus in federal district court alleging insufficient evidence, prosecutorial misconduct, a double jeopardy violation, and ineffective assistance of counsel at trial and on appeal.

Magistrate Judge Virginia Morgan recommended denial of that petition, finding no merit to Harding's allegations and concluding, alternatively, that the challenge to the sufficiency of the evidence and portions of the ineffective assistance of counsel claim had been procedurally defaulted as

untimely. The district court accepted the magistrate judge's recommendation and determined that the "valid analysis of the merits makes unnecessary the consideration of the procedural issues in the case." From that judgment, Harding now appeals.

## II. STANDARD OF REVIEW

The court reviews a district court's legal conclusions in habeas proceedings *de novo* and the findings of fact for clear error. *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir.1999).

Federal courts evaluate habeas petitions according to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996). *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Greer v. Mitchell*, 264 F.3d 663, 671 (6th Cir.2001), *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). Pursuant to the AEDPA, a federal court may not grant the writ unless the state court adjudication on the merits either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). As the United States Supreme Court explained in *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000):

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court

decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

## III. CHALLENGE TO SUFFICIENCY OF THE EVIDENCE

In his first issue on appeal, Harding asserts that his due process rights were violated when he was convicted of felony-murder on insufficient evidence. Specifically, he contends that the prosecution failed to prove beyond a reasonable doubt that the 1983 shooting—rather than the basketball game and the subsequent fighting—was the precipitating cause of the decedent's death in 1987. The respondent maintains that this issue is not properly before the court because Harding failed to present it in his direct appeals before the Michigan state courts. It is well established that "[i]f a habeas petitioner fails to raise an issue in state court, the claim is procedurally defaulted and may not be considered by the federal court on habeas review," absent a demonstration by the petitioner of "cause and prejudice for the default, or that a miscarriage of justice will result from enforcing the procedural default in his case." *Lorraine v. Coyle,* 291 F.3d 416, 422 (6th Cir.2002) (citing *Wainwright v. Sykes,* 433 U.S. 72, 80, 84–87, 90–91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)), *corrected in,* 307 F.3d 459, *cert. denied,* 538 U.S. 947, 123 S.Ct. 1621, 155 L.Ed.2d 489 (2003). Accordingly, we first consider whether Harding is barred from advancing his challenge to the sufficiency of the evidence.

Before the Michigan Court of Appeals, Harding argued that "Defendant-appellant's Conviction For Felony-murder Should Be Reversed as it Was Against The Great Weight of The Evidence." In the brief discussion of the issue the petitioner also expressed his "sincere belief that the proximate cause of death was *not* proved beyond a reasonable doubt." This language suggests that Harding's brief was, in fact, couched in terms more appropriate for a traditional challenge to the sufficiency of the evidence rather than a challenge to the weight of the evidence. Additionally, in resolving the issue presented, the Michigan Court of Appeals itself concluded that Harding had actually raised a federal constitutional challenge to the sufficiency of the evidence. In fact, after finding that the petitioner waived any argument that "the cause of death was not sufficiently established and, ergo, the jury's verdict was against the great weight of the evidence," *Bush,* 466 N.W.2d at 742, the intermediate appellate court proceeded to address the due process claim by concluding:

> Even if Harding's claim is viewed as a challenge to the sufficiency of the evidence rather than to its weight, the claim lacks merit. While prosecution and defense experts differed regarding the cause of death, each expert's opinion was based on supporting medical data. Drs. Kanluen and Petinga, both of whom were forensic pathologists, testified that Jeffrey died of an acute heart attack as a consequence of permanent damage to the heart caused by the 1983 gunshot wound. Dr. Shaya, a family practitioner, testifying for defendants, opined that death was caused by damage to the brain as a result of blows to the head suffered during the 1987 scuffle.
>
> Thus, the question of the cause of death became a question of credibility to be decided by the trier of fact. If the trier of fact chose to believe the prosecu-

tion's witnesses, there was sufficient evidence establishing death under the [appropriate state law] standard.... The jury found in the prosecution's favor. We find that the trial court did not err in denying Harding's motion for a directed verdict because the prosecution did prove the proximate cause of the death beyond a reasonable doubt.

(Citation omitted.)

Harding also continued to press his claim of evidentiary insufficiency before the Michigan Supreme Court. In the "Brief in Support of Application for Leave to Appeal" prepared by his attorney, the petitioner specifically argued that "Appellant's Conviction For Felony–Murder Should Be Reversed as The Evidence Was Insufficient to Support The Verdict." Although the state's highest court focused its attention on Harding's claim of a double jeopardy violation, the court's Chief Justice, concurring in part and dissenting in part, wrote separately to express his view "that the prosecutor failed to present sufficient evidence to prove beyond a reasonable doubt that the defendants proximately caused the victim's death." *People v. Harding*, 443 Mich. 693, 506 N.W.2d 482, 502 (1993) (Cavanagh, C.J., concurring and dissenting).

In light of these facts, we believe that Harding properly presented his sufficiency of the evidence claim throughout the state court proceedings, and therefore, the magistrate judge erred in concluding that the petitioner procedurally defaulted on this issue. Notwithstanding the appropriateness of Harding's appeal, we find that there is no merit to his assertion of a due process violation.

■ As discussed by the Michigan Court of Appeals in its published decision, the issue of the cause of Jeffrey Dudley's death involved a dispute among expert witnesses. Two of the expert witnesses determined that the 1983 gunshot wound was, in fact, the proximate cause of Dudley's death four years later, while one of them reached a different conclusion. All three experts, however, had the opportunity to present medical data supporting their conclusions. Accordingly, we find no due process violation in the manner in which the jury concluded that the gunshot wound caused Dudley's death, and affirm the district court's denial of habeas relief on the sufficiency of the evidence claim.

## IV. DOUBLE JEOPARDY CHALLENGE

■ In his second claim, Harding asserts that the prosecution for felony-murder, following a prior conviction for assault with intent to commit murder for the same incident, constitutes double jeopardy in violation of the Fifth Amendment to the United States Constitution. It is well established that successive prosecutions are prohibited by the Fifth Amendment "only if the two offenses for which the defendant is prosecuted are the 'same' for double jeopardy purposes." *Heath v. Alabama*, 474 U.S. 82, 87, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985). Therefore, "[t]he Double Jeopardy Clause generally forbids prosecution for a greater offense after prosecution for a lesser included offense." *Mitchell v. Cody*, 783 F.2d 669, 671 (6th Cir.1986) (per curiam) (citing *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)).

An exception exists, however, for cases where, as here, "an element of the greater offense has not occurred at the time of the prosecution for the lesser offense...." *Id.* (quoting *Tenn. v. Mitchell*, 682 S.W.2d 918, 920 (Tenn.1984) (following *Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912))). In 1983, Harding and his co-defendants could not have been prosecuted for murder, since an essential

element, namely, the death of the victim, was missing. Therefore, the state's decision to prosecute Harding for felony murder following Dudley's death did not violate his Fifth Amendment rights, and Harding is not entitled to issuance of a writ of habeas corpus on this ground.

## V. CHALLENGE TO THE EFFEC-TIVENESS OF LEGAL ASSIS-TANCE AT TRIAL

In a final allegation of error, Harding disagrees with the magistrate judge's conclusion that his claim of ineffective assistance of counsel was procedurally defaulted by his failure to raise the issue before the Michigan Court of Appeals. Harding insists that the claim could not have been presented on his initial direct appeal because his trial counsel continued to represent him before the state court of appeals. The respondent also notes that the issue was not presented to the Michigan Supreme Court on direct appeal, even though Harding was by then no longer represented by the lawyer who provided his trial defense. Because the parties devote a considerable portion of their briefs to this procedural issue, we begin our analysis by reviewing these challenges.

■ Pursuant to the relevant provisions of Rule 6.508(D)(3) of the Michigan Court Rules of 1985, a "court may not grant relief to the defendant if the motion alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion...." Given that Harding's trial counsel, Lawrence Kaluzny, also represented him before the Michigan Court of Appeals, the petitioner correctly notes that it would be unrealistic to expect his legal representative to assert claims of ineffectiveness against himself. Consequently, the failure to raise the ineffective assistance of counsel issue on direct appeal

is understandable and should not be held against the petitioner.

■ Although the respondent argues that the claim then could have been raised before the state's supreme court, the claim would have likely been rejected as improper, given the restriction in Michigan Court Rule 7.301(A)(2) limiting supreme court review to "a case pending in the Court of Appeals or after decision by the Court of Appeals." Like the district court, we believe the better position in this habeas proceeding is to recognize that Harding's ineffective assistance of counsel claim has not been procedurally defaulted.

In addressing the merits of petitioner's ineffective assistance of counsel claim, this court is guided by the analytical framework articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), under which a defendant is considered to have been deprived of the right to counsel only where he can demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment [and that] ... the deficient performance prejudiced the defense." *Id.* at 687.

Before this court on appeal, Harding advances three allegations of ineffective assistance on the part of his trial attorney. First, the petitioner insists that Kaluzny failed to object to a jury instruction that allegedly left the impression with the finders of fact that evidence of Harding's presence at the scene of the shooting, together with his knowledge of what might transpire, would be sufficient to impose criminal liability upon him. Second, Harding submits that his attorney unreasonably failed to object to portions of the prosecution's closing argument commenting that Harding's "pure silence" during and after the shooting was evidence of his complicity in the crime. Finally, the petitioner claims that Kaluzny was ineffective in not arguing

more persuasively that the 1983 shooting was not the immediate and proximate cause of Jeffrey Dudley's death. We consider each contention in turn.

## A. "Mere Presence" Instruction

■ At the close of the trial testimony, the trial judge instructed the jury "that mere presence at or near the scene of a crime does not of itself permit an inference to be drawn by you that a defendant had the knowledge of any crime which had been planned." Although Harding recognizes that this instruction is an accurate statement of the law, he now contends that his trial counsel was ineffective in not insisting that the court also inform the fact finders that mere presence at the scene of the crime, even accompanied by knowledge of what was to occur, is still insufficient to impose liability. The petitioner maintains that an effective advocate would have ensured that any jury charge expressed the requirement that a defendant actually participate in the crime before being found guilty of the offense.

Undoubtedly, such an expanded instruction would have been preferable in this situation. However, Kaluzny's failure to press for such a complete charge cannot on its own establish counsel's ineffectiveness. The trial testimony in this case was replete with unchallenged references to the petitioner's active participation in the crime—from immobilizing Dudley after the victim first shot Bush in the leg, to shoving Dudley into the backseat of the vehicle, to driving the stolen vehicle from the scene of the shooting, to holding Dudley upside down and dropping him into the sewer. Even without explanation from the trial court, the jury could not help but conclude that Harding was present at the scene, that he was aware of the plans to injure Dudley, and that he played a prominent role in carrying out the criminal activity. Accordingly, we find that Harding is not entitled to habeas relief on this claim.

## B. Prosecutorial Reference to Defendant's Pre-Arrest Silence

■ During closing argument, the prosecutor attempted to convince the jury that Harding was intimately involved in the plan to rob and shoot Dudley. In doing so, the state's attorney claimed:

It was not like something, like the shooting was something out of the blue or whatever. If this was not a planned act, *Harding or the third individual would have said[, "What did you do that for? Why did you shoot him?"]*

*There is no protest like that whatsoever. There was pure silence,* he turned and shot him, *nobody said anything.*

. . .

*There was no protest from Harding at that point in time,* or anybody else, when there was the conversation about shooting him, *no protest whatsoever.* And why? Because it was part of the plan, part of the theft was to get rid of the person who owned the car.

Jeff Dudley is shot, *again, no protest.* But then *not only is there no protest,* but as they're driving down I–75, heading towards Detroit to dump his what they think is a dead body at that point in time, but they're heading down I–75, they're all singing to the radio.

(Emphasis added.)

The petitioner contends that the comments by the prosecutor on his pre-arrest silence violated his right not to incriminate himself and should have elicited a strenuous objection from a competent defense attorney. The magistrate judge determined that this argument was improper, citing this court's decision in *Combs v. Coyle,* 205 F.3d 269, 283 (6th Cir.2000), for the proposition that "the use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment's privilege against self-incrimination." However, the magistrate judge

found that because *Combs* "was decided years after Harding was tried," she could not find Kaluzny ineffective for failing to anticipate that later ruling.

Although we find that the magistrate judge erroneously relied on *Combs* as the relevant authority, the record contains overwhelming evidence of Harding's complicity in the crimes which supports the magistrate judge's ultimate determination to deny the relief sought.[1] As previously noted, Harding cannot obtain habeas corpus relief absent a demonstration of resulting prejudice. The record before this court does not allow for a finding of such prejudice. Even without reference to the evidence of the petitioner's pre-arrest silence, the record contains overwhelming evidence of Harding's complicity in the crimes. The petitioner cannot, therefore, establish a claim of ineffective assistance of counsel based upon his attorney's failure to object to the prosecutor's mention of Harding's silence during the commission of the crime.

### C. Presentation Of Cause Of Death Theory

Finally, Harding submits that his trial attorney was ineffective in failing to present and argue properly his defense that the struggle between Dudley and his brother-in-law actually caused the victim's death. In advancing this argument, the petitioner focuses his allegations of error on defense counsel's failure to object to much of the testimony offered by Dr. Petinga and on the failure to request a jury instruction that would have nullified much of that testimony. Again, were this court to determine that such representation was "deficient," Harding still could not show

the necessary prejudice to justify issuance of a writ of habeas corpus. Even eliminating Dr. Petinga's entire testimony, the jury would still have been able to consider the testimony of Dr. Kanluen, who also concluded that Dudley's death was precipitated by the victim's heart problems. Therefore, Harding's contentions on this issue are without merit and his claim for habeas relief was properly denied.

### VI. CONCLUSION

Based on the foregoing, we AFFIRM the judgment of the district court, although for slightly different reasons from those articulated by the magistrate judge and district judge in their respective opinions.

---

1. The circumstances presented in this case—unlike *Combs*—do not involve Harding's pre-arrest silence, but rather raise a different question altogether: whether the prosecutor's reference to Harding's silence *during the commission of the crime* violates his constitutional privilege against self-incrimination. Applying *Combs* to the facts of this case would necessarily require an unwarranted extension of that case's holding.