**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0584n.06
Filed: July 11, 2005

**No. 04-1448**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| IVORY L. HERRON, | ) |
| | ) |
|     Petitioner-Appellant, | ) |
| | )  **ON APPEAL FROM THE** |
| v. | )  **UNITED STATES DISTRICT** |
| | )  **COURT FOR THE EASTERN** |
| DENNIS STRAUB, Warden, | )  **DISTRICT OF MICHIGAN** |
| | ) |
|     Respondent-Appellee. | ) |
| | ) |

**BEFORE: KEITH, DAUGHTREY, Circuit Judges, and WILLIAMS,[*] District Judge.**

    **DAMON J. KEITH, Circuit Judge**. Petitioner-Appellant Ivory L. Herron appeals the

district court's denial of his petition for writ of habeas corpus in which he challenged his successive

prosecution for homicide as a violation of the Double Jeopardy Clause of the Fifth Amendment to

the Constitution. Because we do not find that the state court's decision is an unreasonable

application of or contrary to clearly established federal law, we **AFFIRM** the decision of the district

court.

**I. BACKGROUND**

    In this case, the factual circumstances are not in dispute. The relevant facts are as follows:

    On October 17, 1995, after drinking alcohol and ingesting a controlled substance,
phencyclidine (PCP), defendant drove a U-Haul truck at an immoderate rate of speed
and in an erratic manner on the streets of Grosse Pointe Woods. He struck one car,
causing it to spin around, then drove on, striking another vehicle head-on, killing the

---

[*] The Honorable Glen M. Williams, United States District Judge for the Western District of
Virginia, sitting by designation.

> driver, Christina Comito. These events occurred on a clear fall day at approximately 3:30 P.M., just as a nearby middle school was dismissing students for the day and traffic on the roads was heavy. Blood tests performed later on defendant revealed the presence of PCP, but no alcohol.

*People v. Herron*, 628 N.W.2d 528, 531(Mich. 2001).

As a result of this incident, the State of Michigan charged Petitioner Ivory L. Herron ("Herron") with a three-count indictment. Count I charged him with second-degree murder in violation of M.C.L. § 750.317. Count II charged him with operating a motor vehicle while under the influence of a combination of alcohol and a controlled substance thereby causing death ("OUI causing death") in violation of M.C.L. § 257.625(4). Count III charged him with driving on a suspended or revoked license.[1] Herron was tried by a jury. On Count I, the court instructed the jury to consider the lesser-included offenses of involuntary manslaughter involving a motor vehicle in violation of M.C.L. § 750.321, and of negligent homicide in violation of M.C.L. § 750.324. *Herron*, 628 N.W.2d at 531. On Count II, the court instructed the jury to consider the lesser-included offense of negligent homicide. *Id.* at 531-32. The jury did not reach a verdict on Count I, and the court declared a mistrial. On Count II, however, the jury convicted Herron of negligent homicide, a lesser-included offense of both second-degree murder and OUI causing death. Herron was sentenced on his conviction for negligent homicide.

Subsequent to Herron's first trial, the State retried Herron on the second-degree murder charge (Count I). *Id.* In the second trial, the court instructed the jury to consider the lesser-included offenses of involuntary manslaughter involving a motor vehicle and negligent homicide. The jury

---

[1] Herron was convicted of Count III, but it is not at issue before this court.

convicted Herron of involuntary manslaughter. *Id.* Herron was then sentenced on his conviction

for involuntary manslaughter.

Herron appealed his convictions and sentences to the Michigan Court of Appeals. That court

found that Herron's Fifth Amendment right against double jeopardy had been violated, and it

therefore vacated his conviction for involuntary manslaughter but affirmed his conviction for

negligent homicide. *Id.* Specifically, that court opined that Herron's intoxicated driving resulted

in the death of one individual, and therefore he could only be convicted of ***one*** offense involving that

death (i.e., second-degree murder, involuntary manslaughter, *or* OUI causing death). *Id.* Moreover,

the state court of appeals "concluded that defendant's conviction of both negligent homicide and

involuntary manslaughter constituted multiple punishments for the same offense, given the

statutorily created link between these two crimes, with negligent homicide being a necessarily

included lesser offense of involuntary manslaughter." *Id.* That court then found that "because the

charges were improperly presented to the jury in the first trial, defendant's conviction of involuntary

manslaughter in the second trial was 'tainted and cannot stand.'" *Id.* at 532. As such, the court of

appeals vacated Herron's conviction and sentence for involuntary manslaughter and affirmed his

conviction and sentence for negligent homicide. *Id.*

That decision, however, was reversed by the Michigan Supreme Court. That court concluded

"that there was no violation of defendant's right to be free from multiple prosecutions when he was

retried on the charge of second-degree murder in the second trial." *Id.* at 533. While the Michigan

Supreme Court determined that Herron's multiple prosecutions did not violate the Fifth Amendment,

it nevertheless concluded that Herron "received multiple punishments for the killing of the victim,

Ms. Comito, in violation of his double jeopardy right to be free from multiple punishments, when

he was convicted of, and sentenced for, negligent homicide *and* involuntary manslaughter." *Id.* at

535. The Michigan Supreme Court agreed with the court of appeals and found that Herron's

punishments violated double jeopardy, but it determined that the appropriate remedy was to vacate

the conviction for the lesser offense and affirm the conviction for the higher offense.[2] Thus, the

Michigan Supreme Court held that "defendant's conviction for involuntary manslaughter should

stand, and his conviction of negligent homicide should be vacated." *Id.* at 538.

Subsequent to the Michigan Supreme Court's decision, Herron filed a timely petition for writ

of habeas corpus with the United States District Court for the Eastern District of Michigan. In his

petition, Herron asserted that his Fifth Amendment right to be free from multiple prosecutions for

the same offense was violated when the State retried him for second-degree murder, after he had

been convicted of the lesser-included offense of negligent homicide. The district court denied his

petition, finding that the jury in his first trial was "hung" as to Count I (second-degree murder) and

did not implicitly acquit him of involuntary manslaughter; therefore, the State was permitted to retry

him on that offense. Herron now appeals the district court's decision to this court.

## II. ANALYSIS

### A. Standard of Review

---

[2] The court specifically indicated: "[I]n cases in which no successive prosecutions problem arises, but in which a defendant has been punished doubly 'for offenses arising out of a single transaction but that could not have been exacted in a single proceeding,' it is an appropriate remedy in a multiple punishment double jeopardy violation to affirm the conviction of the higher charge and to vacate the lower conviction." *People v. Herron*, 628 N.W.2d 528, 538 (Mich. 2001) (citing *People v. Harding*, 443 Mich. 693, 716 (1993)).

When reviewing a petition for a writ of habeas corpus filed after the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may grant relief for any claim adjudicated on the merits in state court if the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d). This court may only find that a decision is "contrary to" Supreme Court law if a state court decides a case differently than the Supreme Court where there are materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 405-06 (2000). This court may find that a state court unreasonably applied the law if it correctly identified a legal rule, but unreasonably applies that rule to the facts. *Id.* at 409. The "unreasonable application" analysis requires that the decision be objectively unreasonable, not simply erroneous or incorrect. *Id.* at 411.

This court will review the district court's decision to grant a petition for habeas corpus de novo, but it will review factual findings made by the district court for clear error. *Barker v. Yukins*, 199 F.3d 867, 870 (6th Cir. 1999).

## B. Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment, which is applicable to the states through the Fourteenth Amendment, states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual

for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187-88 (1957). In general, the clause protects an accused against multiple punishments for the same offense, and against multiple prosecutions for the same offense after he has been *either* acquitted or convicted. *Jones v. Thomas*, 491 U.S. 376, 381 (1989). More specifically, the Supreme Court has held that an implicit acquittal can be determined by jury silence; when a jury is instructed to find a defendant guilty of either first *or* second-degree murder, a defendant will be implicitly acquitted of first degree murder upon a finding of guilt for second-degree murder. *Green v. United States*, 355 U.S. 184, 190 (1957); *see also Terry v. Potter*, 111 F.3d 454, 458 (6th Cir. 1997) (holding that defendant was implicitly acquitted from count 1 where jury was provided with disjunctive instructions and found defendant guilty of count 2 but was silent as to count 1). If a jury does not reach a verdict, however, the Supreme Court has determined that "is not an event which terminates jeopardy." *Richardson v. United States*, 468 U.S. 317, 325 (1984). Thus, "a retrial following a 'hung jury' does not violate the Double Jeopardy Clause." *Id.* at 324.

Moreover, "successive prosecutions are prohibited by the Fifth Amendment 'only if the two offenses for which the defendant is prosecuted are the "same" for double jeopardy purposes.'" *Harding v. Bock*, 2004 WL 1770575,**5 (6th Cir. Aug. 5, 2004) (quoting *Heath v. Alabama,* 474 U.S. 82, 87 (1985)). The Supreme Court has provided guidance on what constitutes the "same offense." *See Blockburger v. United States*, 284 U.S. 299 (1932). "Under *Blockburger*, 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be

applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'" *Kansas v. Hendricks*, 521 U.S. 346, 370 (1997) (quoting *Blockburger*, 248 U.S. at 304).[3] Consistent with the *Blockburger* test, the Supreme Court has also held that "a conviction on a lesser-included offense bars subsequent trial on the greater offense." *Illinois v. Vitale*, 447 U.S. 410, 421 (1980); *see also Brown v. Ohio*, 432 U.S. 161, 168 (1977) ("The greater offense is therefore by definition the 'same' for purposes of double jeopardy as any lesser offense included in it.").

In his petition for habeas, Herron argues that the jury instructions coupled with the jury's finding of guilt of negligent homicide constituted an implicit acquittal from Count I. Specifically, Herron contends that the conviction in his first trial for the lesser-included offense of negligent homicide on Count II constitutes an implicit acquittal on the greater offense of involuntary manslaughter because the *mens rea* required for OUI causing death is gross negligence, but the *mens rea* for negligent homicide is only simple negligence. According to Herron, it follows that because the jury implicitly acquitted him of OUI causing death (by finding him guilty of the lesser-included offense of negligent homicide), the jury's verdict resulted in the *absence* of gross negligence. Thus, Herron would have this court find that the state was collaterally estopped from convicting him for involuntary manslaughter, a crime that includes a *mens rea* of gross negligence. *See Ashe v. Swenson*, 397 U.S. 436, 443 (1970) (applying collateral estoppel to criminal case and explaining that

---

[3] Application of the *Blockburger* test, however, has some limitation. "Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

"when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit").

The district court denied Herron's petition for writ of habeas corpus based on the grounds that his double jeopardy rights were not violated when the state retried him on Count I (second-degree murder) because the first jury was deadlocked as to that count. Moreover, the district court determined that Herron's conviction in his first trial for negligent homicide did not constitute an "implicit acquittal" of the charge for second-degree murder or involuntary manslaughter. In reaching that conclusion, the district court found that the jury that convicted Herron of negligent homicide "was not required to determine whether petitioner was grossly negligent to decide whether or not he was guilty of OUI causing death." Joint Appendix ("J.A.") at 136. The district court explained that, in the charge of OUI causing death, "[t]he jury was required to determine whether (1) the defendant was operating his motor vehicle while he was intoxicated, (2) that he voluntarily drove knowing that he might be intoxicated, and (3) that the defendant's intoxicated driving was a substantial cause of the victim's death." *Id.* at 135.[4] Consequently, the district court concluded that a jury's finding of simple negligence does not indicate that the jury found that he was *not* grossly negligent.

Our review of cases on habeas is limited, and we may only grant a petition if a state court has unreasonably applied or acted contrary to clearly established law. 28 U.S.C. § 2254(d). As the

---

[4] These elements are recited by the Michigan Supreme Court in *People v. Lardie*, 551 N.W.2d 656, 669 (Mich. 1996). While it is unclear whether the jury instructions in this case were identical to the elements set forth in *Lardie*, Herron has neither submitted the jury instructions in the record nor does he contest this recitation by the district court.

United States Supreme Court has instructed: "If this Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." *Taylor*, 529 U.S. at 381. In this case, we are faced with a situation where the Supreme Court has clearly established a rule that a defendant may not be retried for a greater offense after he has been convicted on a lesser-included offense. *Vitale*, 447 U.S. at 421. The Supreme Court has also clearly established that a defendant may be retried following a hung jury. *Richardson*, 468 U.S. at 324.

Here, the first jury convicted Herron of negligent homicide only with regard to Count II but deadlocked as to Count I, even though negligent homicide is a lesser-included offense of both second-degree murder (Count I) and OUI while driving (Count II). Because the jury deadlocked on Count I, *Richardson* appears to permit the government to retry Herron on that count. Herron's retrial, however, places him in double jeopardy under the rule in *Vitale*, which bars retrial on a greater offense after conviction on a lesser-included offense. Thus, the unique circumstances here suggest that the Michigan Supreme Court's application of *Richardson* creates an apparent conflict with the rule in *Vitale*. We are unaware of any case in which the Supreme Court has established that its double jeopardy jurisprudence against subsequent prosecution on a greater offense takes precedence over its law permitting retrial after a hung jury. As such, we cannot conclude that the Michigan Supreme Court unreasonably applied or acted contrary to *clearly established* law regarding principles of double jeopardy.

### III. CONCLUSION

As the Supreme Court has instructed, we are unable to establish a new rule where that Court "has not broken sufficient legal ground to establish an asked-for constitutional principle." *Taylor*, 529 U.S. at 381. As such, we find that the district court did not err in denying Herron's petition for writ of habeas corpus, and we therefore **AFFIRM** its decision.