*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ROYALE GOLD RUNYON,

       Defendant-Appellant.

UNPUBLISHED
June 25, 2020

No. 346601
Kent Circuit Court
LC No. 18-001667-FC

Before: TUKEL, P.J., and SERVITTO and BECKERING, JJ.

PER CURIAM.

A jury convicted defendant, Royale Gold Runyon, of first-degree murder, MCL 750.316(1)(a), felony-murder, MCL 750.316(1)(b), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced him to serve prison terms of life without parole for each of the murder convictions, and to serve a consecutive two-year term for the felony-firearm conviction. Defendant appeals as of right. We affirm in all respects except with regard to defendant's valid double jeopardy argument, and we remand to the trial court to correct both the judgment of sentence and the presentence investigation report (PSIR) to reflect one sentence and one conviction for murder based on two theories.

Defendant's convictions arose from the murder of Eve'vana Galloway in the early hours of December 15, 2012. Defendant's half-brother, Mahdi Hayes, had lately dated Galloway and recently learned that he might have contracted a sexually-transmitted disease. Hayes apparently hired defendant to do the killing. In 2014, a jury convicted defendant of second-degree murder, MCL 750.317, and felony-firearm for Hayes's murder, and the trial court sentenced him to a minimum of 30 years in prison.[1] A person who had been incarcerated with defendant testified that, while incarcerated, defendant admitted to killing Galloway for Hayes, and to then killing Hayes when he did not pay defendant for the homicide.

---

[1] This Court affirmed his convictions and sentence. *People v Royale Gold Runyon*, unpublished per curiam opinion of the Court of Appeals, issued May 21, 2015 (Docket No. 320647).

# I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that his trial counsel provided ineffective assistance by failing to object to the admission of evidence of crimes other than the murder of Galloway, by failing to object to identification testimony, and by failing to object to hearsay statements from Detective Mark Worch. We find no cause for reversal.

Defendant failed to preserve this issue below by moving for a new trial or a hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Our review of unpreserved claims of ineffective assistance of counsel is limited to errors apparent from the record. *People v Unger* (*On Remand*), 278 Mich App 210, 253; 749 NW2d 272 (2008). We review de novo the constitutional question of whether an attorney's ineffective assistance deprived a defendant of his Sixth Amendment right to counsel. *Id*. at 242.

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007) (quotation marks omitted). The right is substantive and focuses on "the actual assistance received." *People v Pubrat*, 451 Mich 589, 596; 548 NW2d 595 (1996). To establish an ineffective assistance of counsel claim, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). Counsel's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007) Deficient performance prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id*. The "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

## A. MRE 404(B)

Defendant first argues that his trial counsel should have objected to evidence of his other criminal acts. Except as allowed by MRE 404(b), evidence of prior crimes by a defendant must be excluded to avoid the danger of a conviction based on a defendant's history of misconduct. *People v Starr*, 457 Mich 490, 495; 577 NW2d 673 (1998). MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

This list is not exclusive, *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000), and evidence is not subject to exclusion just because it discloses a bad act; bad acts can be relevant

as substantive evidence if offered for a proper purpose. *People v Houston*, 261 Mich App 463, 468-469; 683 NW2d 192 (2004).

Testimony indicated that about five hours before the murder of Galloway, defendant attempted to rob John Breslin and fired a shot at Breslin, using the same gun later linked to the killings of Galloway and Hayes. Breslin testified that two men approached him around 11:15 p.m. on December 14, 2012, as he was walking to a party on College Street. One of the men demanded Breslin's valuables and indicated that he had a gun. Breslin fled to a nearby house and knocked on the door. He heard a shot. A nine-millimeter Luger shell casing was later found in the area of the shooting and a bullet was lodged in the wall of a nearby home. The shell casing from that crime scene matched a gun linked to the murders of Galloway and Hayes. Breslin later identified defendant in a police lineup and in court as the man who threatened him with a gun. Detective Timothy DeVries testified that defendant admitted to participating in the attempted robbery, but attributed the shooting to Hayes. One of defendant's friends recalled that defendant mentioned shooting at a man on a porch.

Testimony indicated that Galloway was shot around 4:00 a.m. on December 15, 2012. After the shooting, a silver, four-door Taurus was observed speeding out of Galloway's apartment parking lot. Two car doors were heard closing before the car sped away. There was testimony that Hayes had borrowed a silver four-door Taurus during this time period, and that defendant and Hayes lived about four miles from the site of Galloway's murder and one-and-a-half miles from the place of the attempted robbery.

Angel Hardy indicated that at a vigil for Hayes, murdered five days after Galloway's killing, defendant gave her the gun later associated with all three crimes. After his arrest, defendant called an acquaintance from jail and told him to get the gun from Hardy.

Defendant argues that evidence about his participation in Breslin's assault was unrelated and irrelevant to the circumstances of Galloway's murder. Defendant does not argue that evidence of his killing of Hayes was used for an improper purpose or that it was irrelevant to Galloway's murder, but he argues that the evidence regarding Breslin was irrelevant, claiming that it was not connected to Hayes's or Galloway's murders.

Generally, to be admissible under MRE 404(b), evidence of other crimes, wrongs, or acts (1) must be offered for a proper purpose, (2) must be relevant, and (3) must not have a probative value substantially outweighed by its potential for unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004), citing *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993). A proper purpose is one other than establishing the defendant's character to show his propensity to commit the crime. *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 725 (2005).

Defendant's trial counsel agreed that evidence of the attempted robbery was admissible because use of the same gun linked the robbery with the killings of Hayes and Galloway. Specifically, the evidence of defendant's involvement in assaulting Breslin was relevant to demonstrate that it was more likely that defendant murdered Galloway because he was involved in a crime that occurred only a few hours earlier and relatively nearby, and involved the same gun used to kill Galloway and that had shot the shell casings found near the body of Hayes. The trial

court concluded "that the interlinking crimes may be discussed and evidence presented concerning them during the course of this trial, principally for the purpose of tracking the murder weapon in this case and potentially placing it in the possession of the defendant contemporaneous with the time the crime was committed." Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; *Sabin*, 463 Mich at 56-57. "Under this broad definition," evidence that is useful in shedding light on any material point is admissible. *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). Because evidence of defendant's involvement in the assault on Breslin was submitted for the purpose of establishing defendant's link to the murder weapon, not to show a propensity to murder, the evidence was admitted for a proper purpose.

Defendant also argues that evidence of his crimes against Hayes and Breslin was unfairly prejudicial because it encouraged the jury to convict him based on a propensity to commit serious crimes.

Evidence may be excluded under MRE 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *People v Watkins,* 491 Mich 450, 477, 481; 818 NW2d 296 (2012). Unfair prejudice occurs when there is a tendency for the evidence "to be given undue or preemptive weight" by the jury, or when it "would be inequitable to allow use" of the evidence. *People v Wilson*, 252 Mich App 390, 398; 652 NW2d 488 (2002), citing *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909 (1995).

In *Watkins,* 491 Mich at 487-488, the Court enumerated several considerations that might lead a trial court to exclude evidence as unfairly prejudicial under MRE 403:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony.

In this case, the murders were arguably similar while the attempted robbery was arguably dissimilar. However, all three crimes were committed over the course of only six days, and there was no evidence of any intervening acts that would discount the relevance that the same gun used to kill Galloway was used in the assault against Breslin and the murder of Hayes. The firearm evidence appears to have been scientifically based and very reliable. Furthermore, it was necessary because it showed that defendant was known to have possessed, and used in recent crimes, the same gun used to kill Galloway.

Defendant argues that he was prejudiced because the nature of the incidents implied his guilt. However, " '[u]nfair prejudice' does not mean 'damaging.' " *Lewis v Legrow*, 258 Mich App 175, 199; 670 NW2d 675 (2003). Evidence is unfairly prejudicial when it goes beyond the merits of the case to inject issues broader than the defendant's guilt or innocence, such as "bias, sympathy, anger, or shock." *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005). There is no indication that the evidence at issue here "injected issues broader than the defendant's

guilt or innocence" into consideration. Additionally, there was no indication of a danger of confusion of the issues, misleading the jury, or creating too much empathy, which could have required exclusion of the evidence under MRE 403. The evidence was strongly probative because it demonstrated the likelihood that defendant used the same firearm to commit serious crimes, including the charged crimes, in the same area over the course of six days. Although the evidence was prejudicial, it was not unfairly prejudicial. Accordingly, we conclude that defendant has not demonstrated that any objection by defendant's trial counsel to the admission of evidence of his other crimes would have been meritorious. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010), citing *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

### B. PROSECUTOR'S STATEMENT

Defendant also argues that his trial counsel was ineffective for failing to object to the prosecutor's characterization that Breslin identified defendant as the shooter in the attempted assault. Because the prosecutor based his characterization on record evidence, any objection by defense counsel would have been meritless.

Breslin testified that only one of the two men that approached him spoke, demanding his valuables and stating that he had a gun. Breslin said that he did not get a good look at the man who was *not* speaking and could not identify him. However, Breslin identified defendant in a lineup and in court as the person who demanded his belongings and said that he had a gun. And although Breslin did not see defendant actually shoot the gun, he testified that he was shot at less than a minute after he fled.

In addition, under direct examination, Detective James Jorgensen testified that the person Breslin described to a sketch artist was the person Breslin said demanded his valuables, produced a gun, and shot at him. The prosecutor followed up: "So did he tell you that that was the gunman as he saw it?" Detective Jorgensen answered affirmatively. Detective Jorgensen testified at a later point that Breslin "identified [defendant's photo] as being the person that had attempted to rob him and then fired the shot at him," and that Breslin actually called defendant the gunman.

The foregoing demonstrates that the prosecutor was not stating a fact not in evidence, or offering a misleading characterization; rather, he was basing his characterization on what Detective Jorgensen had reported. On this record, it is not apparent that there were grounds on which defendant's counsel could have successfully objected to the prosecutor's characterization of defendant as the person who shot at Breslin. Again, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201.

### C. HEARSAY

Defendant also argues that his trial counsel should have objected on hearsay grounds to the testimony of Detective Worch regarding what Hayes had told him. Defendant's argument has some merit. Assuming for the sake of argument that defense counsel rendered ineffective

assistance by failing to object to Detective Worch's hearsay testimony, counsel's performance did not prejudice defendant.

Hearsay is an unsworn, out-of-court statement that is offered to establish the truth of the matter asserted. MRE 801(c); *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007). Hearsay is generally not admissible unless it meets the requirements of one of the hearsay exceptions set forth in the Michigan Rules of Evidence. MRE 802; *Stamper*, 480 Mich at 3. Detective Worch testified that he interviewed Hayes twice. During the first interview, Hayes was unable to provide an alibi. In the second interview Hayes denied knowing anyone with a silver Taurus, asked whether Galloway had been sexually assaulted, and, before he was killed the following day, left a message for the police informing them that he knew someone with a white Chevy. These were out-of-court statements apparently offered to establish that Hayes had denied involvement in the crime, i.e., the truth of the matter asserted, rather than to explain Detective Worch's subsequent investigative actions or for another legitimate purpose. Thus, an objection could have been meritorious. This potential error was compounded by defendant's inability to cross-examine Hayes because of his murder.

However, in order to establish his ineffective assistance claim, defendant must demonstrate that it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Jordan*, 275 Mich App at 667. Defendant argues that the hearsay statements prejudiced him because they eliminated Hayes as a suspect and pointed to defendant's involvement. However, Hayes's statements did not exculpate him; Hayes was unable to provide an alibi, and his statement regarding his knowledge of a silver Taurus was proved untruthful, hurting his credibility, while his statement regarding a white Chevy was unremarkable. The jury had heard definitively that a silver, four-door Taurus was observed speeding out of Galloway's apartment parking lot after a shot was heard, and that a silver four-door Taurus was on loan to Hayes during the time that Galloway was murdered. Thus, defendant has not demonstrated that Detective Worch's testimony regarding Hayes's statements prejudiced him by eliminating Hayes as a potential perpetrator of Galloway's murder.

In light of the foregoing, we conclude that defendant has not met his burden to show that his trial counsel's performance "fell below an objective standard of professional reasonableness" such that, but for counsel's errors, a reasonable probability exists that the result of defendant's trial would have been different. *Jordan*, 275 Mich App at 667. Accordingly, his ineffective assistance of counsel claim must fail. *Id.*; Taylor, 275 Mich App at 186.

## II. LIFE WITHOUT PAROLE SENTENCE

Defendant next argues that the trial court erred in sentencing him to life in prison without the possibility of parole without adequately considering factors relevant to juvenile life sentences. We disagree.

Because defendant was less than 18 years of age when he committed the charged crimes, the trial court sentenced him under MCL 769.25, further discussed below.[2] This Court reviews for an abuse of discretion the trial court's sentences under MCL 769.25 for juvenile offenders. *People v Hyatt*, 316 Mich App 368, 423; 891 NW2d 549 (2016), rev'd in part on other grounds and aff'd in part by *People v Skinner*, 502 Mich 89, 96 (2018). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

In *Miller v Alabama*, 567 US 460, 470-473; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the United States Supreme Court concluded that "mandatory life-without-parole sentences for juveniles" constituted cruel and unusual punishment in violation of the Eighth Amendment, US Const, Am VIII. The Court reasoned that such sentences "prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender" because the laws "remov[e] youth from the balance—by subjecting a juvenile to the same life-without-parole sentence applicable to an adult." *Id*. at 474.

After *Miller* was decided, the Michigan Legislature enacted MCL 769.25 and MCL 769.25a.[3] MCL 769.25(1)(a) applies to "a criminal defendant who was less than 18 years of age at the time he or she committed an offense described in subsection (2)," and the defendant was convicted on or after March 4, 2014. As indicated, defendant was less than 18 years of age at the time he committed the charged crimes, and a jury convicted him on July 11, 2018. MCL 769.25(3) requires that "[i]f the prosecuting attorney intends to seek a sentence of imprisonment for life without the possibility of parole for a case described in subsection (1)(a), the prosecuting attorney shall file the motion within 21 days after the defendant is convicted of that violation." The register of actions reflects that the required notice was filed on July 31, 2018. When the prosecutor is seeking a life without parole sentence, the trial court must conduct a hearing where it "shall consider" the factors listed in *Miller* and "may consider any other criteria relevant to its decision, including the individual's record while incarcerated." MCL 769.25(6). The factors listed in *Miller* are as follows:

> Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement)

---

[2] Defendant was 17 years and 9 months old at the time he murdered Galloway by shooting her in the cheek while she lay asleep on her couch.

[3] 2014 PA 22, immediately effective, March 4, 2014.

or his incapacity to assist his own attorneys.  [*Miller*, 567 US at 477-478; 132 S Ct 2455 (citations omitted).]

Defendant argues that the trial court inadequately considered his family and home environment, which he maintains would weigh against a sentence of life without parole.  However, the record shows that the trial court thoroughly discussed defendant's traumatic childhood and the unstable nature of the environment to which defendant had been exposed, and concluded: "I think this one probably is the strongest factor mitigating the defendant's culpability."  Arguably, this means that the trial court considered and weighed in defendant's favor his family and home environment.

Defendant also argues that the trial court did not consider defendant's individual potential for rehabilitation, and points out that he had not had time to therapeutically benefit from his incarceration,[4] his lack of serious crimes prior to December 2012, and that his prisoner-in-possession of a weapon crime occurred in 2014, approximately four years before his sentencing in the present case.  To the contrary, the trial court referred to several difficulties defendant has had while incarcerated, including "multiple episodes of misconduct, many of them violent, and he has been subject to appropriate discipline as a result of his poor adjustment to and behavior in the prison system."  The trial court attributed defendant's transfer to "a maximum security or very high security facility" to defendant's difficulty with complying with the structured setting. Additionally, it was in defendant's favor that the trial court did not recite defendant's legal history while considering his prospects for rehabilitation.  The trial court noted that defendant had not accumulated an extensive juvenile record, but that he had been convicted of an attempted home invasion that occurred about a year before the murder of Galloway.  Thus, the record belies defendant's assertion that the trial court did not properly consider his individual potential for rehabilitation.

The record shows that, in addition to considering defendant's family and home environment and his potential for rehabilitation, the trial court discussed defendant's chronological age, the circumstances surrounding the offense, including defendant's role in the offense, family and peer pressure, defendant's remorse, and whether, but for the incompetencies associated with youth, defendant could have been charged and convicted of a lesser crime.  In our view, the trial court provided extensive individualized consideration of the relevant factors set forth in *Miller*, and, according to MCL 769.25(6), specified "the aggravating and mitigating circumstances considered by the court and the court's reasons supporting the sentence imposed."  The trial court concluded:

So, as I look over the various factors that we've considered, about the only one that would seem to benefit the defendant is the family and home environment to which he was exposed.  As I've said, I've seen many successful people endure family environments much worse than the defendant did, but it has to be said that

---

[4] Defendant was sentenced to prison in February 2014 after a jury convicted him of murdering Hayes.

the defendant's was not the best and undoubtedly was not helpful to his development.

But it seems to me the other factors and factors outside of those set forth in the *Miller* decision all tend to militate in the other direction, and the mere fact that the defendant was essentially a one-man crime wave in December of 2015 [sic] committing multiple capital offenses within a very short period of time of and by itself would seem to call for a rather substantial response.

Given the trial court's thorough consideration of the *Miller* factors and detailed findings in support of the sentence, we conclude that the outcome was reasonable given the circumstances, and that the trial court did not abuse its discretion by sentencing defendant to life without parole.[5]

## III. DOUBLE JEOPARDY

Lastly, defendant argues that the trial court sentenced him twice for the same offense in violation of his constitutional protections against double jeopardy. We agree.

The Michigan Constitution and the Fifth Amendment of the United States Constitution protect a criminal defendant from being "twice put in jeopardy" for the same offense. US Const Amend V; Const 1963, art 1, § 15. The prohibition against double jeopardy provides three related protections: "(1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *People v Nutt*, 469 Mich 565, 574-575; 677 NW2d 1 (2004) (citations omitted). At issue here is the third, or "multiple punishments" protection. *People v Ream*, 481 Mich 223, 227; 750 NW2d 536 (2008).

The double jeopardy prohibition of multiple punishments aims to avoid more than one punishment for the same offense arising out of a single prosecution. *People v Herron*, 464 Mich 593, 600; 628 NW2d 528 (2001). Defendant was charged with felony-murder (predicated on the felony of home invasion), and first-degree murder, both for the killing of Galloway. The jury convicted defendant of both crimes. The trial court did not mention the felony-murder conviction at the sentencing hearing, but sentenced defendant to life without parole for each of the crimes.

"Where dual convictions of first-degree premeditated murder and first-degree felony murder arise out of the death of a single victim, the dual convictions violate double jeopardy." *People v Coomer*, 245 Mich App 206, 224; 627 NW2d 612 (2001). In such situations "to avoid double-jeopardy implications, the defendant receives one conviction of first-degree murder, supported by two theories" so that a defendant has "one conviction and one sentence for having committed one crime." *People v Williams*, 475 Mich 101, 103; 715 NW2d 24 (2006), citing *People v Wilder*, 411 Mich 328; 308 NW2d 112 (1981); see also *Coomer*, 245 Mich App at 224. Because

---

[5] As defendant acknowledges in his brief, the trial court presided over all three cases involving defendant's conduct in December 2012, and by the time of defendant's sentencing for the murder of Galloway, the trial court was in a better position than other judges might be when imposing sentences due to his familiarity with defendant and the facts of the several cases.

the trial court sentenced defendant to two sentences of life without parole for the killing of one person, to avoid double jeopardy implications, defendant's judgment of sentence must be amended to specify a single conviction, supported by two theories, and a single sentence for the killing of one victim. The PSIR must also be amended for the same reasons and thereafter sent to the Michigan Department of Corrections. See *People v Lampe*, 327 Mich App 104, 120-121; 933 NW2d 314, 327 (2019) (noting the court's obligation to provide the Department of Corrections an accurate PSIR, and observing that the PSIR "follows the defendant to prison," and "can have ramifications related to security classification or parole) (quotation marks and citation omitted).

Remanded for amendment of the judgment of sentence and PSIR, and otherwise affirmed. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Jane M. Beckering

-10-