**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
**Maura D. Corrigan**

Justices
**Michael F. Cavanagh**
**Elizabeth A. Weaver**
**Marilyn Kelly**
**Clifford W. Taylor**
**Robert P. Young, Jr.**
**Stephen J. Markman**

FILED JULY 3, 2001

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                   No. 114858

IVORY L. HERRON,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

This case requires that we determine whether defendant's right to be free from double jeopardy was violated. The issues presented are (1) whether defendant's retrial for second-degree murder, after a jury in the first trial deadlocked on that count, was a constitutionally impermissible successive prosecution; (2) whether defendant's conviction of involuntary manslaughter on retrial resulted in an unconstitutionally impermissible multiple punishment because

he had previously been convicted of negligent homicide under prosecution for a separate count; and (3) whether defendant is entitled to a conviction of the lesser offense when multiple punishments have resulted from a retrial.

We hold that defendant's retrial for second-degree murder was permissible and did not violate the constitutional protection against successive prosecutions. However, the retrial of the defendant resulted in multiple punishments for the same offense. Therefore, the defendant is entitled to a remedy for the multiple punishments violation. We hold that the constitutional violation should have been remedied by affirming defendant's conviction of involuntary manslaughter and vacating his conviction of negligent homicide.

Additionally, we address whether the defendant's conviction of involuntary manslaughter at the second trial, following his previous conviction of negligent homicide, was precluded by application of MCL 768.33, as proposed by Judge WHITE. We conclude that MCL 768.33 does not apply to defendant because he was not subjected to a subsequent trial for different degrees of the same offense for which he was originally acquitted or convicted upon an indictment.

Accordingly, we reverse the judgment of the Court of Appeals, reinstate defendant's conviction and sentence for involuntary manslaughter, and vacate his conviction and

2

sentence for negligent homicide.

I

The facts relevant to our decision in this case were sufficiently set forth in the unpublished decision of the Court of Appeals:

> On October 17, 1995, after drinking alcohol and ingesting a controlled substance, phencyclidine (PCP), defendant drove a U-Haul truck at an immoderate rate of speed and in an erratic manner on the streets of Grosse Pointe Woods. He struck one car, causing it to spin around, then drove on, striking another vehicle head-on, killing the driver, Christina Comito. These events occurred on a clear fall day at approximately 3:30 P.M., just as a nearby middle school was dismissing students for the day and traffic on the roads was heavy. Blood tests performed later on defendant revealed the presence OF PCP, but no alcohol.
>
> The prosecutor charged defendant with second-degree murder, MCL 750.317; MSA 28.549 [count I], operating a motor vehicle while under the influence of a combination of alcohol and a controlled substance thereby causing death (OUI causing death), MCL 257.625(4); MSA 9.2325(4) [count II], and driving on a suspended or revoked license [count III]. The jury was permitted to consider, on count I, the lesser offenses of involuntary manslaughter involving a motor vehicle, MCL 750.321; MSA 28.553, and negligent homicide, MCL 750.324; MSA 28.556, and on count II, negligent homicide was again given as a lesser included offense of OUI causing death. . . . Ultimately, the jury convicted defendant on count II of negligent homicide and on count III of operating a motor vehicle while his license was suspended or revoked,[1] but was unable to reach a verdict on count I. The trial court ordered a mistrial on that count. The prosecutor retried defendant on the second-degree murder charge, with

---

[1] Count III is not at issue here.

3

the jury being instructed on the lesser offenses of involuntary manslaughter involving a motor vehicle and negligent homicide. The jury convicted defendant of involuntary manslaughter. [Issued April 6, 1999 (Docket No. 198353), slip op at 1-2.]

On appeal to the Court of Appeals, defendant argued that his retrial on the charge of second-degree murder, after being convicted of negligent homicide in his first trial, violated his constitutional protections against double jeopardy. Stating that "a fundamental error in the proceedings below . . . resulted in a violation of defendant's constitutional right to be free from double jeopardy," the Court of Appeals first determined that where the facts of a case support separate charges for murder, involuntary manslaughter, or OUI causing death, the charges must be brought in the alternative, and presented to the jury in that manner. *Id*. at 2. The Court then concluded that because "the defendant's drunken driving ha[d] caused the death of one person, he [could] be *convicted* of only one of these offenses." *Id*. (emphasis in the original). The Court of Appeals further concluded that defendant's conviction of both negligent homicide and involuntary manslaughter constituted multiple punishments for the same offense, given the statutorily created link between these two crimes,[2] with negligent homicide being a necessarily

---

[2] See MCL 750.325.

4

included lesser offense of involuntary manslaughter. *Id.*

Although the Court of Appeals recognized that, when a defendant is convicted of both a greater and lesser offense of the same category, the general rule is to vacate the conviction of the lesser offense and affirm the conviction of the greater,[3] it determined that, because the charges were improperly presented to the jury in the first trial, defendant's conviction of involuntary manslaughter in the second trial was "tainted and cannot stand." *Id.* at 3. Accordingly, the Court of Appeals vacated defendant's conviction for involuntary manslaughter and affirmed his conviction for negligent homicide. *Id.*[4]

In concurring with the Court of Appeals majority, Judge WHITE relied on a statutory rather than constitutional ground,[5] essentially stating that because negligent homicide was a "different degree" of involuntary manslaughter, defendant's conviction of negligent homicide precluded his subsequent conviction of involuntary manslaughter arising from the same vehicular death. *Id.* at 1.

---

[3] *People v Harding,* 443 Mich 693; 506 NW2d 482 (1993).

[4] The Court of Appeals also ordered resentencing on defendant's negligent homicide conviction for reasons that are not relevant here.

[5] MCL 768.33.

5

This appeal involves challenges based on constitutional double jeopardy principles. A double jeopardy challenge presents a question of law that we review de novo. See, e.g., *People v Sierb,* 456 Mich 519, 520-21; 581 NW2d 219 (1998).

US Const, Am V provides, in pertinent part

No person . . . shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . .

This provision is applicable to the states through the Fourteenth Amendment. *Benton v Maryland,* 395 US 784, 794; 89 S Ct 2056; 23 L Ed 2d 707 (1969). Further, Michigan Const 1963, art 1, § 15 provides:

No person shall be subject for the same offense to be twice put in jeopardy.

The Double Jeopardy Clause of the Fifth Amendment protects against two general governmental abuses: (1) multiple *prosecutions* for the same offense after an acquittal or conviction; and(2) multiple *punishments* for the same offense. *Ohio v Johnson*, 467 US 493, 497; 104 S Ct 2536; 81 L Ed 2d 425 (1984).

"The principal thrust of double jeopardy protection by the very terms of our federal and state constitutional provision[s] is protection from repeated prosecutions for the same criminal offense arising out of the same conduct." *People*

*v Harding*, 443 Mich 693, 705; 506 NW2d 482 (1993). This includes protection from being prosecuted in a subsequent prosecution for a greater offense, following conviction in a previous trial for a lesser included offense. *Green v United States*, 355 US 184, 190; 78 S Ct 221; 2 L Ed 2d 199 (1957); *Price v Georgia*, 398 US 323; 90 S Ct 1757; 26 L Ed 2d 300 (1970). Additionally, the concept of multiple punishment in double jeopardy jurisprudence has as its purpose the avoidance of more than one punishment for the same offense arising out of a single prosecution." *Harding, supra* at 705. In the present case, we are faced with challenges involving both defendant's constitutional right to be free from multiple prosecutions and his right to be free from multiple punishments.

### A

First, we conclude that there was no violation of defendant's right to be free from multiple prosecutions when he was retried on the charge of second-degree murder in the second trial.[6] Successive-prosecution cases implicate the

---

[6] The Court of Appeals concluded that "defendant's right against successive prosecutions for the same offense was implicated once the trial court accepted the first jury's verdict of negligent homicide and the prosecutor was allowed to retry defendant on the higher charges." Slip op at 2. However, the Court of Appeals holding erroneously failed to recognize that the second trial in this case was a retrial
(continued...)

7

core values of the principles relating to double jeopardy. See *Bartkus v Illinois (On Rehearing)*, 359 US 121, 151; 79 S Ct 676; 3 L Ed 2d 684 (1959) (Black, J., dissenting). Where successive prosecutions occur, double jeopardy principles protect a defendant's interest in not having to twice run the gauntlet, in not being subjected to "embarrassment, expense and ordeal," and in not being compelled "to live in a continuing state of anxiety and insecurity," with enhancement of the "possibility that even though innocent he may be found guilty." *Green v United States*, *supra* at 187-88; see also *United States v Wilson*, 420 US 332, 343; 95 S Ct 1013; 43 L Ed 2d 232 (1975).

The United States Supreme Court has recognized that certain situations are not amenable to strict application of the general principle that the Double Jeopardy Clause bars a defendant from being tried twice for the same crime.

---

[6](...continued)
after mistrial of the second-degree murder charge initially brought simultaneously with the OUI causing death charge. Jeopardy relating to the second-degree murder charge continued from the initial trial into the retrial. The retrial did not involve a second prosecution for the OUI charge. Thus, as will be explained, the problem perceived by the Court of Appeals is actually a multiple punishments problem rather than a multiple prosecutions problem. This case is similar to *Harding*, *supra*, in which this Court discussed the difficulty in analyzing a challenge arising when the punishment complained of is exacted from successive trials rather than from a single trial. See discussion below at 18-21.

*Richardson v United States*, 468 US 317, 323-324; 104 S Ct 3081; 82 L Ed 2d 242 (1984). In *Richardson*, the Supreme Court held that in those circumstances in which "manifest necessity" causes the termination of a criminal trial, the defendant's right against being placed twice in jeopardy is not implicated with regard to the charges unsuccessfully completed. In particular, the Supreme Court has long recognized that a jury's inability to agree upon a verdict constitutes manifest necessity. *Id.*

Michigan courts also recognize that where manifest necessity compels the termination of a proceeding, the state's double jeopardy provisions do not bar retrial. *People v Thompson,* 424 Mich 118, 123; 379 NW2d 49 (1985), quoting *People v Anderson*, 409 Mich 474, 483-84; 295 NW2d 482 (1980). Such manifest necessity, although elusive of precise definition, includes at least those instances in which a jury is unable to reach a verdict. *Thompson, supra* at 123.

When a jury is unable to reach a verdict and a declaration of mistrial has been made by the court, the mistrial is not the equivalent of an acquittal. There exists a long line of cases, starting with the opinion of Justice Story in *United States v Perez*, 22 US (9 Wheat) 579, 580; 6 L Ed 165 (1824), which hold that "a failure of the jury to agree on a verdict [is] an instance of 'manifest necessity' which

permits a trial judge to terminate the first trial and retry the defendant, because 'the ends of public justice would otherwise be defeated.'"   The Court in *United States v Bordeaux,* 121 F3d 1187, 1193 (CA 8, 1997) stated that

> [w]here a jury ha[s] not been silent as to a particular count, but where, on the contrary, a disagreement is formally entered on the record[,] [t]he effect of such entry justifies the discharge of the jury, and therefore a subsequent prosecution for the offence as to which the jury has disagreed and on account of which it has been regularly discharged, would not constitute second jeopardy.

The present case falls within the scope of this exception to the general prohibition against successive prosecutions. Here, the jury in defendant's first trial expressly deadlocked with regard to count I (second-degree murder), thus compelling the termination of an otherwise properly pursued criminal prosecution. Under these circumstances, defendant was neither acquitted nor convicted of this offense. *Richardson, supra* at 323-324; *Thompson, supra* at 123. Rather, the trial court's declaration of a mistrial, regarding the second-degree murder charge, completely halted the proceedings that ultimately would have led to a verdict on this charge. *Johnson, supra* at 499-500. Where criminal proceedings against an accused have not run their full course, the Double Jeopardy Clause does not bar a second trial. *Price v Georgia*, *supra* at 326-27.   Thus, because the prosecutor's retrial of defendant on the charge of

second-degree murder was the result of a hung jury, we conclude that there was no violation of double jeopardy principles aimed at multiple prosecutions.

Vacating defendant's conviction for involuntary manslaughter, the Court of Appeals majority in this case determined that a "fundamental error in the proceedings below . . . has resulted in a violation of defendant's constitutional right to be free from double jeopardy." Slip op at 2. Apparently, this "fundamental error" occurred when the prosecutor chose to pursue convictions against defendant for both second-degree murder and OUI causing death. According to the Court majority, "where the facts support separate charges of murder, involuntary manslaughter, or OUI causing death, *the charges must be brought in the alternative, and presented to the trier of fact as such.*" *Id.* (emphasis added). We disagree to the extent where, as here, defendant was charged with second-degree murder and OUI causing death in the first trial, but was acquitted of the latter, and properly retried for second-degree murder in a subsequent trial.

Thus, the Court of Appeals vacation of defendant's conviction for involuntary manslaughter on this ground was in error.

### B

Second, we conclude that defendant received multiple

11

punishments for the killing of the victim, Ms. Comito, in violation of his double jeopardy right to be free from multiple punishments, when he was convicted of, and sentenced for, negligent homicide *and* involuntary manslaughter.

Under neither the federal nor the Michigan double jeopardy provisions does this Court instruct the Legislature regarding what conduct it can and cannot make separate crimes. *People v Robideau,* 419 Mich 458, 485; 355 NW2d 592 (1984). In Michigan, the penalty for involuntary manslaughter is codified,[7] but the definition is left to the common law. *People v Stubenvoll,* 62 Mich 329, 331; 28 NW 583 (1886). This Court has defined the common-law offense of involuntary manslaughter as "the killing of another without malice and unintentionally, but in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or in negligently doing some act lawful in itself, or by the negligent omission to perform a legal duty." *People v Ryczek*, 224 Mich 106, 110; 194 NW 609 (1923); see

---

[7] The penalty for involuntary manslaughter is set forth in MCL 750.321:

> Any person who shall commit the crime of manslaughter shall be guilty of a felony punishable by imprisonment in the state prison, not more than fifteen years or by fine of not more than seven thousand five hundred dollars, or both, at the discretion of the court.

also *People v Beach,* 429 Mich 450, 477; 418 NW2d 861 (1988).

The kind of negligence required for manslaughter is something more than ordinary or simple negligence, however, and is often described as "criminal negligence" or "gross negligence," *People v Townes*, 391 Mich 578, 590 n 4; 218 NW2d 136 (1974).

The negligent homicide statute, MCL 750.324 provides:

> Any person who, by the operation of any vehicle upon any highway or upon any other property, public or private, at an immoderate rate of speed or in a careless, reckless or negligent manner, but not wilfully or wantonly, shall cause the death of another, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than 2 years or by a fine of not more than $2,000.00, or by both such fine and imprisonment.

Where two statutes prohibit violations of the *same* societal norm, albeit in a different manner, as a general principle it can be concluded that the Legislature did not intend multiple punishments. *Robideau, supra* at 487. With regard to the statutes addressing the offenses of involuntary manslaughter and negligent homicide, it is reasonable to conclude that the causation of the death of another human being is the violation of a societal norm sought to be prohibited by the Legislature. These two crimes are part of a hierarchy of offenses in which statutes incorporate the elements of a base statute, but increase the penalty on the basis of the presence of increasingly aggravating conduct.

13

See *id*. at 487-88; see also *People v Price*, 214 Mich App 530, 544; 543 NW2d 49 (1995).  In other words, the only difference between the two offenses is the level of conduct necessary to establish criminal culpability.

That the involuntary manslaughter and negligent homicide statutes prohibit violations of essentially the same societal norm is further evidenced by MCL 750.325, which provides:

> The crime of negligent homicide shall be deemed to be included within every crime of manslaughter charged to have been committed in the operation of any vehicle, and in any case where a defendant is charged with manslaughter committed in the operation of any vehicle, if the jury shall find the defendant not guilty of the crime of manslaughter, it may render a verdict of guilty of negligent homicide.

The hierarchal nature of these two offenses thus evidences a legislative prohibition against the imposition of dual convictions and punishments for violation of the societal norm sought to be protected by both the statute against involuntary manslaughter and the statute against negligent homicide.  See *Robideau, supra* at 487-88; *People v Sturgis,* 427 Mich 392, 407; 397 NW2d 783 (1986).

In the present case, defendant was first convicted of negligent homicide, under a charge of OUI causing death.[8]  He

---

[8] As we have concluded today, such charging neither constituted overreaching by the prosecutor, nor resulted in a violation of defendant's right to be free from multiple
(continued...)

14

was retried on the second-degree murder charge, a charge on which the jury in the first trial had expressly deadlocked, and was convicted of involuntary manslaughter. Defendant thus received multiple punishments for the killing of Ms. Comito, in violation of his double jeopardy right to be free from multiple punishments for the same offense. See *Robideau, supra* at 487.

In *People v Harding, supra*, the defendants were found guilty of armed robbery, assault with intent to murder, and

---

[8](...continued)
punishments. However, a trial court is required to instruct the jury concerning the law applicable to the case and to present the case fully and fairly to the jury in an understandable manner. MCL 768.29. *People v Mills,* 450 Mich 61, 80; 537 NW2d 909 (1995). We recognize that the instructions articulated by the trial court at defendant's first trial have served to complicate the issues in the present case. Here, the trial court instructed the jury on the offense of negligent homicide as a lesser included offense of *both* second-degree murder and OUI causing death.

Defendant, however, arguably waived any potential claim of error resulting from the trial court's instructions to the jury at his first trial. Waiver has been defined as "the intentional relinquishment or abandonment of a known right." *People v Carines,* 460 Mich 750, 762-763, n 7; 597 NW2d 130 (1999). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *United States v Griffin*, 84 F3d 912, 924 (CA 7, 1996). In the present case, defendant did not fail to object to the negligent homicide instruction as it related to the OUI causing death charge. Rather, he both requested, and approved of, this instruction. Defendant may not now harbor any claim of error regarding this instruction as an appellate parachute. See *People v Carter,* 462 Mich 206, 214; 612 NW2d 144 (2000).

15

possession of a firearm, arising out of a robbery during which the victim "was shot once in the heart and once in the abdomen, and then thrown headfirst into a sewer to die." *Id.* at 696 (BRICKLEY, J.). He survived the attack, but suffered from irreversible heart problems from that time until his death four years later. *Id.* at 696-697. The defendants were then prosecuted for felony murder and felony-firearm. *Id.* In a joint trial with separate juries, one defendant was convicted of felony murder and felony-firearm, while the other defendant was convicted of felony murder only. *Id.* at 698. The defendants appealed, and the Court of Appeals held that the prosecution and conviction of both defendants for felony murder was not precluded by double jeopardy. The Court of Appeals reversed the second conviction and the sentence for felony-firearm, on the basis that it was precluded by double jeopardy protections. *Id.* at 698. The Court of Appeals also concluded, in light of the felony-murder conviction, that both defendants' prior convictions and sentences for armed robbery and assault with intent to commit murder were violative of the protection against multiple punishments and should be vacated and set aside, the time having been served by them credited to the sentences imposed as a result of their earlier convictions. *Id.* at 699.

This Court affirmed in part and reversed in part, holding

that it was not a violation of the Double Jeopardy Clause to charge, try, and convict these defendants of felony murder after prosecution for the other crimes arising out of the same conduct. *Id*. at 704-705. This Court went on to analyze the "constitutional implications" of the penalties imposed on the defendants for the previous crimes in light of the felony-murder conviction. *Id*. Reversing in part the Court of Appeals decision, this Court also held that since the felony-murder conviction did not amount to a double jeopardy violation, it followed that the accompanying felony-firearm conviction was valid as well.

Thus, in *Harding*, this Court had occasion to consider whether a multiple punishment problem that arises when punishments are exacted in successive trials should be treated in the same manner as when multiple punishments are exacted in a single trial. The Court stated:

> We conclude that double jeopardy protection dictates that defendants not receive a form of multiple punishment that could not have been exacted had their felonious intentions been realized sooner and had they been prosecuted to the extent of their ultimate culpability in the first trial. They were not placed in jeopardy twice by the second prosecution . . . ; rather, they were subjected to punishment for offenses arising out of a single transaction that could not have been exacted in a single proceeding. [*Id*. at 715-716.]

In separate opinions, a majority of the *Harding* Court recognized that the same guiding principles apply in both

17

situations.[9]

Harding also stated that, in cases in which no successive prosecutions problem arises, but in which a defendant has been punished doubly "for offenses arising out of a single transaction but that could not have been exacted in a single proceeding," it is an appropriate remedy in a multiple punishment double jeopardy violation to affirm the conviction of the higher charge and to vacate the lower conviction. *Id.* at 716; see also *Jones v Thomas,* 491 US 376, 381-382; 109 S Ct 2522; 105 L Ed 2d 322 (1989). Likewise, we believe that *Harding* can be extended to cases, such as the instant one, in which the multiple punishments problem does not arise in the first trial because of the declaration of a mistrial. Had the jury not deadlocked on the second-degree murder charge, but, instead had convicted the defendant of involuntary manslaughter, punishment could have been exacted in a single trial and the multiple punishment remedy would have been to

---

[9]

Thus, in cases involving the double jeopardy protection against double punishment, although we have not decided a case involving both successive prosecutions and multiple punishment as in *Garrett* [*v United States,* 471 US 773; 105 S Ct 2407; 85 L Ed 2d 764 (1985)], it is clear that we have interpreted the Michigan Constitution consistently with the United States Supreme Court's interpretation of the federal constitution-legislative intent controls. [*Id.* at 708 (opinion of Brickley, J.).]

18

affirm the greater conviction. This fact, coupled with the fact that the second trial was permissibly brought out of manifest necessity, supports the conclusion that, for constitutional purposes, defendant's conviction for involuntary manslaughter should stand, and his conviction of negligent homicide should be vacated. We therefore reverse the Court of Appeals decision, reinstate defendant's conviction and sentence for involuntary manslaughter, and vacate his conviction and sentence for negligent homicide.

## III

Apart from the constitutional issues of double jeopardy discussed above, however, we are also faced with the applicability of MCL 768.33 to the present case. Section 33 provides:

> When a defendant shall be acquitted or convicted upon any indictment for an offense, consisting of different degrees, he shall not thereafter be tried or convicted for a different degree of the same offense; nor shall he be tried or convicted for any attempt to commit the offense charged in the indictment or to commit any degree of such offense.

The application of this statute to the present case was first raised by Judge WHITE in her concurring Court of Appeals opinion.

According to Judge WHITE, because the defendant should not have been tried for involuntary manslaughter after being

**19**

convicted of negligent homicide, the involuntary manslaughter conviction was improper. Instead, Judge WHITE would have affirmed the defendant's negligent homicide conviction and vacated his involuntary manslaughter conviction. Essentially, then, Judge WHITE's opinion suggests that MCL 768.33 justifies departure from the generally accepted remedy for multiple punishments, see *Harding*, *supra*, and requires affirmance of the lesser conviction rather than the greater.

While we acknowledge that MCL 768.33 may affect the prosecutor's ability to retry a defendant for a crime in instances where the defendant has previously been convicted of a lesser-included offense of that crime, we hold that MCL 768.33 is inapplicable to the facts of this case. Thus, we believe that the appropriate remedy is to affirm the defendant's involuntary manslaughter conviction and vacate his negligent homicide conviction.

In reviewing questions of statutory construction, our purpose is to discern and give effect to the Legislature's intent. *People v Morey*, 461 Mich 325, 329-330; 603 NW2d 250 (1999). "We begin by examining the plain language of the statute; where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed–no further judicial construction is required or permitted, and the statute must be enforced as written." *Id.* at 330. "We

20

must give the words of a statute their plain and ordinary meaning . . . ." *Id.*

The plain language of § 33 provides that a defendant shall not be tried or convicted for a different degree of the "same offense" for which he has been acquitted or convicted upon any indictment. In the present case, the only acquittals or convictions the defendant received were upon an indictment for OUI causing death.[10] He was not thereafter tried for a different degree of OUI causing death. Therefore, he was not subsequently tried for a different degree of the same offense.

Judge WHITE's opinion implies that the defendant's conviction of negligent homicide upon an indictment for OUI causing death barred subsequent trials (including a retrial) for any charges that would include negligent homicide as a lesser offense.[11] We respectfully disagree. The plain language of § 33 ties the "offense, consisting of different

_____

[10] In association with the OUI causing death charge, the defendant was convicted of negligent homicide as a lesser-included offense and was thereby implicitly acquitted of OUI causing death.

[11] We note that the complicated question arises partially from the fact that the jury was instructed that a homicide offense, negligent homicide, was also a lesser-included offense of OUI causing death. Our opinion should not be read as holding that negligent homicide is a lesser-included offense of OUI causing death. Rather, we are merely addressing the issues as they pertain to the prosecution of the defendant and the punishments he actually received.

21

degrees" to the indictment under which a defendant is convicted, *not* to the particular crime of which he is ultimately convicted. This becomes apparent when the statute is read in its entirety. In the first part of § 33, the phrase "for an offense, consisting of different degrees" immediately follows, and modifies, the word "indictment." Moreover, the second half of the statute clearly refers to a subsequent trial or conviction regarding "the offense *charged in the indictment.*" MCL 768.33 (emphasis added).

Further, in Michigan, a prosecution must be based on an information or an indictment. MCR 6.112(B). The word "indictment" includes *information*, presentment, complaint, warrant and any other formal written accusation. MCL 750.10; see also *People v Grove*, 455 Mich. 439, 459, n 24; 566 NW2d 547 (1997). The term "indictment" is to be treated as also referring to charges made by the filing of an information. *People v Russo*, 439 Mich 584, 588, n 1; 487 NW2d 698 (1992); see also MCL 767.2. "Each count in an indictment is regarded as if it was a separate indictment." *People v Vaughn,* 409 Mich 463, 465; 295 NW2d 354 (1980).

In essence, defendant here was originally tried under three separate charges, or "indictments": second-degree murder, OUI causing death, and driving on a suspended driver's license. At his first trial, defendant was convicted of

negligent homicide.  However, this conviction was based upon count II (OUI causing death) of a three-count information.

Because the focus of § 33 is on the offense charged in the indictment, not on the offense for which a defendant is ultimately convicted, defendant herein could not thereafter be tried for a "different degree" of OUI causing death.  At his second trial, defendant was convicted of involuntary manslaughter, as a result of being retried on the charge of second-degree murder, a charge upon which the jury in defendant's first trial expressly deadlocked.

The issue then becomes whether OUI causing death and second-degree murder or involuntary manslaughter constitute "different degrees" of the *same offense.*  We conclude that they clearly do not, and are thus persuaded that this lack of relationship serves to negate the application of § 33 under the circumstances of the present case.

### IV. CONCLUSION

We conclude that it was appropriate for the prosecutor to retry defendant for second-degree murder in a subsequent trial, after the jury deadlocked on that count after the first trial.  The prosecutor's retrial of defendant on the charge of second-degree murder was the result of manifest necessity, and therefore not in violation of double jeopardy principles aimed at multiple prosecutions.

23

We thus reverse the judgment of the Court of Appeals and reinstate defendant's conviction and sentence for involuntary manslaughter. However, because defendant received inappropriate multiple punishments for involuntary manslaughter and negligent homicide, we vacate his conviction and sentence for negligent homicide.

CORRIGAN, C.J., and CAVANAGH, WEAVER, KELLY, TAYLOR, and YOUNG, JJ., concurred with MARKMAN, J.