*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVID MCNAIR,

        Defendant-Appellant.

UNPUBLISHED
December 29, 2022

No. 357974
Wayne Circuit Court
LC No. 18-002868-01-FC

Before: JANSEN, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right[1] his jury trial convictions of two counts of first-degree felony murder, MCL 750.316(1)(b), second-degree murder, MCL 750.317, armed robbery, MCL 750.529, carrying a concealed weapon, MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[2]  The trial court sentenced defendant to 40 to 60 years' imprisonment for each of his first-degree felony-murder convictions, 30 to 60 years' imprisonment for his second-degree murder conviction, 20 to 40 years' imprisonment for his armed robbery conviction, one to five years' imprisonment for his carrying a concealed weapon conviction, and a consecutive two years' imprisonment for his felony-firearm conviction.  We affirm defendant's convictions of first-degree felony murder, armed robbery, and felony-firearm, vacate defendant's conviction and sentence for second-degree murder, and remand to the trial court to modify defendant's judgment of sentence and resentence defendant on his first-degree felony-murder convictions.

---

[1] Defendant was not timely appointed appellate counsel following trial and sentencing, and when counsel was appointed, it was discovered that several trial transcripts were missing.  The trial court reissued the judgment of sentence in this case on April 27, 2021, and defendant appeals that order.

[2] Defendant was acquitted of first-degree premeditated murder.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the fatal shootings of Deonta Blinco and Javionne Trotter, which occurred outside a home at 1659 Buena Vista Street in Detroit between 2:30 and 3:00 p.m. on February 16, 2018. The prosecution presented the testimony of Larry Jackson, who drove Blinco and Trotter to the crime scene, as well as the testimony of several witnesses who lived on or near the street to establish the facts concerning the homicides. The testimony of the witnesses was largely consistent. On the day of the shooting, Jackson drove Blinco and Trotter in his black Jeep Compass to meet defendant and codefendant Christopher Pritchett[3] on Buena Vista Street. Trotter was Jackson's cousin, and Blinco was a family friend whom Jackson considered to be like a cousin. Jackson testified that the purpose of the meeting was for Blinco and Trotter to trade firearms with defendant and Pritchett. According to Jackson, Blinco and Trotter connected with defendant and Pritchett over social media and reached an agreement for Pritchett and Trotter to trade a Smith & Wesson nine-millimeter pistol with an extended magazine possessed by Blinco and Trotter for two nine-millimeter pistols possessed by defendant and Pritchett. Jackson was not sure which individuals, exactly, had agreed to what part of the exchange.

As Jackson drove down Buena Vista Street with Blinco and Trotter in his Jeep, either defendant or Pritchett flagged down the vehicle. Jackson parked on the side of the street in front of the house where the murders occurred. Blinco and Trotter got out of the Jeep, shook hands with defendant and Pritchett, and had a quiet one- to two-minute conversation with defendant and Pritchett. Pritchett and Trotter walked to the back of the house, and defendant and Blinco stood in the front yard. Moments later, a gunshot rang out from behind the house, immediately followed by four more in quick succession. Jackson testified that, just after the shootings behind the house, defendant pulled out a .38 revolver from his coat and shot Blinco multiple times. Blinco ran and fell down into the street. Defendant ran to the back of the house, and Jackson drove away. Trotter was lying on the ground behind the house. Defendant hopped the fence behind the house and waited for Pritchett. Pritchett struggled to get over the fence, and one witness testified that Pritchett had what appeared to be a gun in his pocket, which caused his pants to sag and start to fall down. After Pritchett got over the fence, defendant and Pritchett ran through yards and across the street running parallel to Buena Vista Street. Blinco and Trotter both died of multiple gunshot wounds. Jackson, with the help of others, tracked down the identities of defendant and Pritchett using social media, shared the information with the police, and later identified defendant and Pritchett from photographic arrays.

Defendant was charged with first-degree premeditated murder, two counts of first-degree felony murder, armed robbery, carrying a concealed weapon, and felony-firearm. At trial, defendant testified that he shot Blinco in self-defense. Defendant admitted that he agreed to attend the firearms transaction with Pritchett to provide protection and that he brought the .38 caliber pistol for that purpose, but he denied that he ever went to the transaction with any intention to shoot anyone or commit a robbery. Defendant testified that, after the gunshots rang out from behind the house, Blinco pulled out a pistol and began firing it at defendant, grazing his left

---

[3] Defendant and Pritchett were tried jointly with separate juries.

shoulder and piercing his jacket in another spot. Defendant testified that he then fired two shots at Blinco from his .38 revolver, ran behind the house, tripped over the legs of Trotter, who was lying on the ground, hopped the fence, and fled.

## II. SUFFICIENCY OF THE EVIDENCE

### A. FIRST-DEGREE FELONY MURDER AND SECOND-DEGREE MURDER

Defendant argues that there was insufficient evidence to support his murder convictions and felony-firearm conviction. We disagree that there was insufficient evidence to support defendant's convictions of two counts of first-degree felony murder and one count of felony-firearm. However, defendant was improperly convicted of second-degree murder because he was also convicted of first-degree felony murder for the homicide of Blinco.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Martin*, 271 Mich App 280, 340; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008). "When a defendant challenges the sufficiency of the evidence in a criminal case, this Court considers whether the evidence, viewed in a light most favorable to the prosecution, would warrant a reasonable juror to find guilt beyond a reasonable doubt." *People v Werner*, 254 Mich App 528, 530; 659 NW2d 688 (2002). "In reviewing a sufficiency argument, this Court must not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses." *People v Stiller*, 242 Mich App 38, 42; 617 NW2d 697 (2000).

Defendant challenges both his first-degree felony-murder convictions and his second-degree murder conviction. As explained in *People v Carines*, 460 Mich 750, 759; 597 NW2d 130 (1999):

> The elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [the statute, including armed robbery]. [Quotation marks and citation omitted.]

The elements of second-degree murder are: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *Werner*, 254 Mich App at 531 (quotation marks and citations omitted). Defendant also challenges his felony-firearm conviction on the basis of the sufficiency of the evidence of his murder convictions. "To be guilty of felony-firearm, one must carry or possess [a] firearm, and must do so when committing or attempting to commit a felony." *People v Burgenmeyer*, 461 Mich 431, 438; 606 NW2d 645 (2000) (emphasis omitted). The elements of a crime can be proven with circumstantial evidence and reasonable inferences drawn from that evidence. *People v Fletcher*, 260 Mich App 531, 560; 679 NW2d 127 (2004).

Defendant argues that the prosecution failed to bring forth sufficient evidence to show he possessed the required malice to support a first-degree felony-murder conviction.[4] "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). Malice may be inferred when there is evidence that a defendant "intentionally set in motion a force likely to cause death or great bodily harm." *Stiller*, 242 Mich App at 43 (quotation marks and citation omitted). "Malice may also be inferred from the use of a deadly weapon." *Carines*, 460 Mich at 759.

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to find that defendant acted with malice and to convict defendant of first-degree felony murder. Defendant agreed to attend a transaction involving the trading of firearms. As will be discussed later, there is sufficient evidence to show that the proposed gun swap was actually a guise for an armed robbery. By his own admission, defendant's intention in attending the transaction was to provide protection for Pritchett, and defendant carried a pistol for that purpose. That deadly weapon was concealed in defendant's pocket. There was testimony that, after the gunfire behind the house began, without saying a word, defendant took out his weapon, fired at and hit Blinco, killing him. There is evidence that defendant set in motion the events that led to Blinco's death, used a deadly weapon, and displayed the intent to cause death or serious bodily injury, showing defendant acted with malice.

Defendant next argues that he did not possess malice because Blinco shot at defendant first and defendant was acting in self-defense. "Once evidence of self-defense is introduced, the prosecutor bears the burden of disproving it beyond a reasonable doubt." *People v Fortson*, 202 Mich App 13, 20; 507 NW2d 763 (1993). "A killing may be considered justified if the defendant acts in self-defense." *People v Bailey*, 330 Mich App 41, 46; 944 NW2d 370 (2019). "[A]n individual who is not the aggressor in an encounter is justified in using a reasonable amount of force against his adversary, but only if the individual believes that he is in immediate danger of bodily harm and that the use of force is necessary to avoid said danger." *Id*. (quotation marks and citation omitted). A defendant must honestly and reasonably believe that he is in danger of imminent death or serious bodily harm. *People v Heflin*, 434 Mich 482, 502; 456 NW2d 10 (1990).

Defendant contends that, even if he was mistaken about the degree of threat Blinco posed to him, his claim of self-defense still succeeds because he had the honest and reasonable belief that the use of deadly force was necessary. The prosecution produced sufficient evidence to disprove defendant's claim that he acted in self-defense. Ultimately, the jury's conclusion that defendant did not act in self-defense was made by assessing defendant's credibility, and this Court may not interfere with a jury's credibility determination. *Stiller*, 242 Mich App at 42. The only evidence defendant offered that he acted in self-defense was his own testimony that Blinco fired at him first,

---

[4] Defendant also asserts that the prosecution failed to bring forth sufficient evidence of a predicate offense, in this case armed robbery, to support a first-degree felony-murder conviction. Whether there is sufficient evidence of an armed robbery is discussed in the discussion of defendant's second issue on appeal.

and there was evidence to the contrary. Jackson testified that defendant fired at Blinco, who never fired a weapon, and without being provoked by Blinco. No witness besides Jackson actually saw anyone fire a weapon. No witness testified that Blinco had a weapon, used a weapon, or otherwise attacked defendant. There is also a lack of physical evidence that definitively shows Blinco or Jackson fired at defendant. Although there were shell casings recovered from the street, they were recovered in front of a different house and their presence was explained by the fact that there was a shooting on the street a few days before the murders in this case. No firearms were recovered from the crime scene to link Blinco to the shots that left shell casings in the street or to otherwise support defendant's contention that Blinco shot at defendant. On the basis of this evidence, a reasonable jury could conclude that defendant did not act in self-defense and displayed the malice necessary to properly convict defendant of first-degree felony murder.

Defendant also mentions that, "at the very least," he acted under the influence of passion when he shot and killed Blinco, without developing the argument or citing to any legal authority. In Michigan, a charge of murder is mitigated to voluntary manslaughter if it is shown that the defendant acted in the heat of passion. *People v Reese*, 491 Mich 127, 149; 815 NW2d 85 (2012). The Supreme Court has explained that "to show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *People v Mendoza*, 468 Mich 527, 535; 664 NW2d 685 (2003). By failing to cite any supporting legal authority, defendant has abandoned this issue. *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001). Even had defendant not abandoned the issue, there is no error warranting reversal. The same analysis of defendant's self-defense argument applies equally to his claim of sudden heat of passion—there is sufficient evidence to show that defendant was unprovoked when he shot Blinco. Accordingly, there is sufficient evidence to support defendant's felony-murder convictions. Because there was sufficient evidence that defendant possessed a firearm during the commission of first-degree felony murder, there is, likewise, sufficient evidence to support defendant's felony-firearm conviction. *Burgenmeyer*, 461 Mich at 438.

Regarding defendant's second-degree murder conviction, the trial court violated defendant's Fifth Amendment right to not be placed twice in jeopardy for the same crime when it entered judgment against and sentenced defendant for both first-degree felony murder and second-degree murder for the killing of Blinco.[5] Although defendant did not raise this issue in the trial court or on appeal, "a double jeopardy issue presents a significant constitutional question that will be considered on appeal regardless of whether the defendant raised it before the trial court." *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008). This Court has the authority "to go beyond the issues raised and address any issue that, in the court's opinion, justice requires be considered and resolved." *People v Cain*, 238 Mich App 95, 127; 605 NW2d 28 (1999) (quotation marks and citation omitted).

---

[5] Double jeopardy is not implicated when a defendant is convicted of both armed robbery and first-degree felony murder with the robbery as the predicate offense. *People v Smith*, 478 Mich 292, 319; 733 NW2d 351 (2007).

Both the Michigan and United States Constitutions provide that a person shall not be twice put into jeopardy for the same crime. Const 1963, art 1, § 15; US Const, Am V. This protection applies to multiple prosecutions for the same crime and multiple punishments for the same crime. *People v Herron*, 464 Mich 593, 599; 628 NW2d 528 (2001). The Supreme Court held in *Herron* that the Fifth Amendment right to be free from multiple punishments is violated when a defendant is convicted of and sentenced for two different crimes arising from the homicide of a single victim. *Id*. at 604. The Court reasoned that the hierarchical nature of homicide offenses evidences the Legislature's intent to prohibit dual convictions and punishment for the same action. *Id*. at 606. The appropriate remedy when a defendant is unconstitutionally convicted of and punished for multiple counts of murder for a single victim is to affirm the more serious offense and vacate the conviction and sentence of the lesser offense. *Id*. at 609.

In this case, the trial court erred when it entered judgment and sentences against defendant for both felony murder and the lesser offense of second-degree murder for the homicide of Blinco. Therefore, we vacate defendant's second-degree murder conviction and sentence.

## B. ARMED ROBBERY

Defendant argues that there was insufficient evidence to support his conviction of armed robbery. We disagree.

As stated in *People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007), to prove armed robbery, the prosecution must establish:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon.

A larceny is committed when one takes and carries away the goods or personal property of another without the consent and against the will of the owner. *People v Ainsworth*, 197 Mich App 321, 324; 495 NW2d 177 (1992). Under the statute, " 'in the course of committing a larceny' includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property." MCL 750.530(2). "[T]he prosecutor need not show that the victim actually owned the property taken. Rather, the prosecutor need only show that the property was taken in the victim's 'presence' and that the victim's right to possess the property was superior to the defendant's right to possess it." *People v Rodgers*, 248 Mich App 702, 707; 645 NW2d 294 (2001).

Defendant argues that he is not guilty of armed robbery because the prosecution failed to prove that a larceny was committed. The prosecution offered sufficient evidence to prove that defendant and Pritchett committed a larceny. Trotter was at Buena Vista Street for the purpose of exchanging with defendant and Pritchett a nine-millimeter pistol he possessed, making it

reasonable to infer that Trotter actually possessed a nine-millimeter pistol during the encounter. Also, one of the two shell casings discovered in the backyard was a nine-millimeter casing, the caliber of the handgun that Trotter intended to trade to defendant and Pritchett. Trotter was killed after being shot multiple times, showing the use of force or violence. After the shootings, no firearm was recovered from the crime scene to show Trotter still possessed the gun he brought to the transaction. Helen Bledsoe testified that, after the shooting, she saw Pritchett with what appeared to be a gun in his pocket. Thus, there was circumstantial evidence that Trotter possessed a nine-millimeter handgun, Pritchett took the handgun without Trotter's consent, and Pritchett carried away Trotter's property.

The prosecution also introduced other acts evidence under MRE 404(b)[6] to show that defendant and Pritchett had a common scheme or plan to commit armed robberies on Buena Vista Street. On January 27, 2018, defendant and Pritchett committed another armed robbery under circumstances nearly identical with those in this case. Pritchett and one of the two victims of that robbery used social media to arrange a transaction for Pritchett to sell iPhones to him. Pritchett set up a meeting for the sale at about 3:00 or 4:00 p.m. on Buena Vista Street. While the first victim was checking to see if the iPhone worked, defendant held a pistol up to the head of the second victim and took his phone and cash, and then Pritchett took the phone and cash of the first victim. Defendant admitted to the larceny, but testified that he was unarmed. Given this evidence, a rational jury could find beyond a reasonable doubt that a larceny was committed in this case.

Although defendant has not argued that the taking of the property was not attributed to him, it bears noting that there was sufficient evidence to prove that defendant was guilty of armed robbery under a theory of aiding and abetting.[7] As stated in *People v Tanner*, 255 Mich App 369, 418-419; 660 NW2d 746 (2003), rev'd on other grounds by 469 Mich 437 (2003), to support a finding that a defendant aided and abetted a crime, the prosecution must show that:

> (1) the crime charged was committed by defendant or some other person, (2) defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that he gave aid and encouragement. An aider and abettor must have the same requisite intent as that required of a principal. [Citation omitted.]

---

[6] MRE 404(b)(2) allows the prosecutor to use evidence of crimes or acts separate from the charged offense to prove "motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident."

[7] The prosecution argued that defendant could be found guilty under a theory that he aided and abetted Pritchett, and the jury was given an instruction on aiding and abetting. "[A]iding and abetting is not a separate substantive offense. Rather, being an aider and abettor is simply a theory of prosecution that permits the imposition of vicarious liability for accomplices." *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006) (quotation marks and footnote omitted).

"An aider and abettor's state of mind may be inferred from all the facts and circumstances." *Carines*, 460 Mich at 758 (quotation marks and citation omitted).

Defendant went to a firearms transaction with Pritchett while carrying a gun to provide protection, thus participating in the deal. Defendant also knew that Pritchett was carrying a firearm. After the shooting started behind the house, defendant immediately began firing at Blinco. None of the witnesses besides Jackson described any type of delay between gunshots or separate bursts of fire, leading to the inference that the near-simultaneous shootings were planned. At a minimum, defendant's shooting of Blinco aided in Pritchett's escape from the robbery. After the shooting, defendant and Pritchett fled together with defendant waiting for Pritchett to climb over the fence in the backyard. The fact that defendant and Pritchett committed a robbery under almost identical circumstances a few weeks before the murders in this case further indicates that there was planning and coordination between defendant and Pritchett to carry out the armed robbery. In sum, on the basis of all the evidence, a rational jury could conclude that there was a larceny, and defendant perpetrated with Pritchett a planned armed robbery.

## III. SENTENCING

Defendant argues that he is entitled to resentencing on his felony-murder convictions because the trial court did not properly consider the mitigating sentencing factor of defendant's youth and did not adequately justify its sentencing decisions. We agree.

This Court reviews the reasonableness of a sentencing decision for an abuse of discretion. *People v Skinner*, 502 Mich 89, 131; 917 NW2d 292 (2018), lv held in abeyance ___ Mich ___; 953 NW2d 383 (2021). "An abuse-of-discretion standard recognizes that there may be more than one principled outcome and the trial court may not deviate from that principled range of outcomes." *People v Boykin*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket Nos. 157738 and 158695); slip op at 6.

Defendant was sentenced under MCL 769.25. MCL 769.25(2)(b) provides for the sentencing of a criminal defendant who was a juvenile at the time the offense was committed, convicted of enumerated crimes including first-degree murder. Under the statute, the prosecutor is permitted to move in the trial court to sentence a juvenile defendant to life imprisonment without the possibility of parole. MCL 769.25(2). If the prosecutor does not seek such a sentence, the defendant shall be sentenced to a maximum sentence of not less than 60 years' imprisonment and a minimum sentence between 25 and 40 years' imprisonment. MCL 769.25(9). In this case, the prosecutor did not seek a sentence of life without the possibility of parole, and defendant was sentenced to a term of years.

When a criminal statute provides a range of sentencing outcomes, the trial court has the duty to exercise its discretion to tailor a sentence to the "particular circumstances of the case and the offender," and to do so in a way that "ensures the individualized sentence conforms with the principle of proportionality." *Boykin*, ___ Mich at ___; slip op at 7. "An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *Id*.

-8-

These considerations, known as the *Snow*[8] factors, lay out the aims of criminal sentencing. *People v Wines*, 323 Mich App 343, 351; 916 NW2d 855 (2018), rev'd in part on other grounds 506 Mich 954 (2020).

When sentencing a juvenile defendant, there are additional considerations regarding the defendant's age. The United States Supreme Court has identified three important distinctions between juvenile and adult offenders: (1) juveniles possess a "lack of maturity and an underdeveloped sense of responsibility" that leads to "impetuous and ill-considered actions and decisions;" (2) "juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure;" and (3) "the character of a juvenile is not as well formed as that of an adult," meaning a juvenile's character traits are more likely to positively evolve than an adult's. *Roper v Simmons*, 543 US 551, 569-570; 125 S Ct 1183; 161 L Ed 2d 1 (2005) (quotation marks and citations omitted). In a later case, the Supreme Court identified a number of factors for a sentencing court to consider regarding the mitigating factor of a juvenile defendant's youth. *Miller v Alabama*, 567 US 460, 477-478; 132 S Ct 2455; 183 L Ed 2d 407 (2012). The Michigan Supreme Court has summarized the *Miller* factors to consider as:

> (1) "his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) "the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; (3) "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; (4) whether "he might have been charged [with] and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys"; and (5) "the possibility of rehabilitation . . . ." [*Skinner*, 502 Mich at 114-115, quoting *Miller*, 567 US at 477-478.]

Further, youth is, in and of itself, a mitigating factor. *Boykin*, ___ Mich at ___; slip op at 13.

When a defendant is sentenced to a term of years under MCL 769.25(9), the statute does not provide any guidance to trial courts on how to craft a minimum sentence within the 25- to 40-year minimum sentence range. In *Wines*, this Court held that trial courts should take into consideration the attributes of youth and be guided by the *Snow* and *Miller* factors when crafting a minimum sentence under MCL 769.25. *Wines*, 323 Mich App at 352. In *Boykin*, the Supreme Court affirmed that holding and further explained the requirements for a trial court sentencing a juvenile offender for first-degree murder. *Boykin*, ___ Mich at ___; slip op at 16. A sentencing court is required to consider age as a mitigating factor when crafting a first-degree murder sentence for a juvenile, whether it is a life sentence or a term of years sentence. *Id*. at ___; slip op at 17. The mitigating factor of youth should inform the trial court's consideration of the *Snow* factors. *Id*. at ___; slip op at 16. Unlike when conducting a *Miller* hearing that is required to impose a life-without-parole sentence under MCL 769.25(6), the trial court is not required to directly address the *Miller* factors on the record when sentencing a juvenile defendant to a term of years. *Id*. at

---

[8] *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972).

___; slip op at 17. Rather, the trial court's articulation of its sentencing rationale only needs to comply with the "general requirement that a trial court must adequately explain its sentence on the record in order to facilitate appellate review." *Id*. However, it must be clear that the trial court "properly considered youth to be mitigating." *Id*. at ___; slip op at 19.

Defendant's sentences of 40 to 60 year's imprisonment for each felony-murder conviction fall within the guidelines set out by the Legislature in MCL 769.25(9). Although the sentencing guidelines are now only advisory, a sentence within the guidelines range is still presumptively reasonable. *People v Posey*, 334 Mich App 338, 358; 964 NW2d 862 (2020). "To overcome the presumption, [a defendant must] show that there was something unusual about the circumstances of his case that made the sentence disproportionate." *People v McFarlane*, 325 Mich App 507, 538; 926 NW2d 339 (2018). Although defendant's sentence is presumptively proportionate, resentencing is required in this case because the trial court did not offer any rationale for its sentencing decision on the record, which it is required to do to facilitate appellate review. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). At the sentencing hearing, the trial court made corrections to the scoring of the sentencing guidelines. Defense counsel did not make an argument regarding what would be a proportionate sentence for defendant. The trial court then heard the prosecution's request for sentencing defendant to the top of the guidelines range. The court asked defendant if he had anything to say, and defendant did not. Then the trial court announced defendant's sentences without elaboration of its reasons for imposing the sentences. This Court is prohibited from conducting a de novo review of the proportionality of a sentence. *Skinner*, 502 Mich at 132. Without a record upon which to consider whether the trial court abused its discretion when sentencing defendant, there is nothing for this Court to review regarding the proportionality of defendant's sentences. Therefore, we remand to the trial court to resentence defendant and articulate its reasoning on the record.

## IV. CONCLUSION

We affirm defendant's convictions of first-degree felony murder, armed robbery, and felony-firearm, vacate defendant's conviction and sentence for second-degree murder, and remand to the trial court to modify defendant's judgment of sentence and for resentencing on defendant's first-degree felony murder convictions. We retain jurisdiction.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael F. Gadola

-10-

# Court of Appeals, State of Michigan

# ORDER

People of MI v David McNair

Docket No.    357974

LC No.        18-002868-01-FC

Kathleen Jansen
Presiding Judge

Deborah A. Servitto

Michael F. Gadola
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court.  We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, we affirm defendant's convictions of first-degree felony murder, armed robbery, and felony-firearm, vacate defendant's conviction and sentence for second-degree murder, and REMAND to the trial court to modify defendant's judgment of sentence and for resentencing on defendant's first-degree felony murder convication.  The proceedings on remand are limited to these issues.

The parties shall promptly file with this Court a copy of all papers filed on remand.  Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

December 29, 2022
Date

_____
Chief Clerk